JAMES EDWARD TYSON, *Petitioner,* vs. FRANK STOUTAMIRE, Sheriff of Leon County, Florida, *Respondent.*

140 So. 454.

Division A.

Opinion filed March 21, 1932.

Petition for rehearing denied April 20, 1932.

*B. K. Roberts* and *DeHoff & DeHoff,* for Petitioner;

*B. A. Meginniss, Cary D. Landis,* Attorney General, and *H. E. Carter,* Assistant, for Respondent.

*W. J. Oven, Edgar W. Waybright* and *Stanton Walker,* as amici curiae.

PER CURIAM.—Paragraph 4 of Section 1011 R. G. S., 1285 C. G. L., as amended by Section 3 of Chapter 15625, Acts of 1931, approved June 26, 1931, reads as follows:

"(4) No motor vehicle shall be operated on a public highway outside of any municipal corporation in this state carrying a load of more than sixteen thousand pounds, *including weight of such vehicle.*" (Emphasis ours).

This proceeding in habeas corpus was instituted to determine directly the constitutionality of the above quoted section, in view of its relation to Chapter 14764, Acts of 1931, which in Section 10 thereof provides:

"No truck or trailer shall be authorized under any certificate of public convenience and necessity in common carriage to carry a *load* in excess of 12,000 pounds, and the commission shall by the terms of all certificates issued by it limit the load weight of every truck or trailer to not more than 12,000 pounds. * * * "

The argument of petitioner for his discharge from custody is, that since the first law above named applies to so-called "private" trucks and motor vehicles, while the last mentioned statute applies solely to "certificated" vehicles holding permits from the railroad commission, that there is an unlawful and unconstitutional discrim-

ination created between the first class and the latter class of vehicles with resultant denial of the equal protection of the laws, because under the first class, so-called *private* vehicles must conform to a maximum weight limit of 16,000 pounds, (which includes the weight of the vehicle), while under the last classification, ''certificated'' vehicles operating under authority of the Railroad Commission are permitted to carry as much as 12,000 pounds of *load,* regardless of the weight of the vehicle, which may make the combined weight of both vehicle and load run much over 16,000 pounds in the case of a ''certificated'' vehicle.

In this connection it is pertinent to refer to the fact that in the briefs of the petitioner it is stated that for a ''certificated'' vehicle to carry a 12,000 pound LOAD, that a six-ton type of truck would have to be used, making the combined weight of *truck and load* amount to approximately 20,500 pounds, the truck weighing, so it is said, about 8,500 pounds.

Assuming, for the sake of argument, that we may take judicial notice of the divers weights of motor vehicles as determined by the State Motor Vehicle Commissioner, we may regard it as established for the purposes of this record, that under Chapter 15625, *supra,* a *private use* truck or bus would be limited to a maximum weight limit of 16,000 pounds for both load and vehicle combined, while a so-called ''certificated'' truck or bus, falling under the jurisdiction of the Railroad Commission, as provided by Chapter 14764, *supra,* would under the latter act, by authority of a permit from the Commission, be permitted to be operated with a combined weight of vehicle and load of as much as 20,500 pounds.

A majority of the Court have no difficulty in reaching the conclusion that no denial of the equal protection of the laws is brought about by providing one maximum weight for a public service or ''certificated'' vehicle

while a different and less maximum weight is fixed for a private use vehicle. Nor is such classification otherwise invalid, unreasonable, arbitrary or unenforceable. Miami Transit Co. v. McLin, 101 Fla. 1233, 133 Sou. Rep. 99; Hiers v. Mitchell, 95 Fla. 345, 116 Sou. Rep. 81.

The weight limit provisions of Chapter 14764, *supra,* have not been repealed by the terms of par. 4 of Section 3 of Chapter 15625, *supra,* merely because the latter chapter was enacted subsequent to Chapter 14764. Both were passed at what may be regarded as one continuous session of the legislature, although the latter act became a law at a special session which immediately followed the regular session of 1931. The rule is well established that acts passed at one and the same session of the Legislature, or at what is equivalent thereto, which acts deal with the same general subject, must be considered as being *in pari materia.* Amos v. Mathews, 99 Fla. 1, 65, 126 Sou. Rep. 308, 331.

Furthermore, Section 8 of Chapter 15625 contains a provision which reads as follows: "But nothing in this Act shall be construed to repeal *any part of* Senate Bill No. 411 passed at the regular session of the 1931 Legislature." That Senate Bill No. 411 is what now appears in the books as Chapter 14764 is admitted.

It is the duty of the Court, in view of the foregoing proviso found in Chapter 15625, *supra,* considered in connection with the general rule for construing acts *in pari materia,* to so construe the apparently conflicting provisions of Chapter 14764 and Chapter 15625 as to give each of them a reasonable field of operation. This is especially true when it appears that both Acts were passed at what was practically one and the same session of the Legislature, and each of them dealt with a distinct phase of motor vehicle traffic. And in addition to the foregoing, the Legislature has specifically said in the statute which was last passed (Chapter 15625) that

in passing Chapter 15625 it did not intend to repeal ''any part of'' Chapter 14764 (Senate Bill 411).

So a majority of the Court think that it is clear that the Legislature has the constitutional authority to separately deal with common carrier, private carrier, and special contract carrier, vehicles as a separate class from all others, and to impose upon that class such greater or less burdens and restrictions of operation as legislative wisdom may dictate. Accordingly, when the Legislature does pass two separate laws undertaking to deal with these classes separately, and says in the last law passed that in making a special classification out of all motor vehicles except ''certificated'' vehicles, that it did not intend to repeal ''any part of'' the law relating to certificated motor vehicles, we are compelled to give such legislative declaration its proper effect by holding that the weight limit of 16,000 pounds (combined load and vehicle), specified in Chapter 15625, has no application to those separately classified vehicles which were separately dealt with by the Legislature and regulated by Chapter 14764, *supra*.

Paragraph 4 of Section 3 of Chapter 15625, *supra*, provides that ''no'' motor vehicle (which means passenger or freight carrying motor vehicles) shall be operated on a public highway carrying a load of more than 16,000 pounds, *including the weight of such motor vehicle.* That section is not in such hopeless conflict with Chapter 14764 that it cannot be reconciled therewith, and we are not authorized to hold that by reason of an apparent conflict, Chapter 15625 must be deemed to have superseded and repealed the provisions of Chapter 14764. To hold that the weight limit paragraph contained in Chapter 15625, which applies as well to passenger buses as to freight carrying vehicles supersedes the weight limits of Chapter 14764, we must thereby hold that the Legislature intended to bring about a result in the enactment of

Chapter 15625 which would in effect probably outlaw a majority of the passenger carrying buses licensed by the Railroad Commission under Chapter 14764, as well as a large number of freight carrying vehicles operating under the Commission.

Nothing could be clearer than that the Legislature did not intend any such result, and that it evidenced its intent that no such result should ensue, by expressly providing in Chapter 15625 that such Chapter should not repeal "any part of" Chapter 14764.

The history, purpose and intent of Chapter 15625 in the 1931 session of the Legislature, is so well known that we are probably authorized to take judicial knowledge of the fact that Chapter 15625 was principally enacted to provide an increase in automobile license tag fees, to give effect to the constitutional amendment exempting automobiles from *ad valorem* taxes, and to provide additional revenues for the common school by revising and re-enacting a portion of the existing statute. Likewise, the history, intent and purpose of Chapter 14764 is also so clear and well known that we are probably authorized to judicially notice the fact that its enactment was directly brought about because of the supposed effect of the decision of the Supreme Court of the United States in the case of Smith v. Cahoon, 283 U. S. 553, 51 Sup. Ct. 582, 75 L. Ed. 1264, which was supposed to have, to a large extent, rendered invalid the 1929 law on the subject of *certificated* vehicles.

The provisions of Chapter 15625, Acts of 1931, prescribing a more restricted weight limit for so-called "private" trucks and other vehicles than is authorized with respect to "certificated" vehicles, being valid, the petitioner should be remanded and it is so ordered.

Petitioner remanded.

WHITFIELD, TERRELL, BROWN AND DAVIS, J.J., concur.

BUFORD, C.J., AND ELLIS, J., dissent.

Brown, J. (Concurring).—In addition to what is said in the majority opinion, I am inclined to think there is a reasonable basis for the classification made by the legislature which limits private vehicles to a less weight than is required of common carrier motor vehicles authorized to operate under the strict rules embodied in Chapter 14764, Laws of 1931, and under the rules and supervision of the Railroad Commission.

All the petitioner has to do is to get a tag at the rate fixed by the statute for such a tag, which authorizes the use of any kind of motor vehicle regardless of width of tires, class of vehicle, without inspection as to brakes, steering gear, condition of tires, weight of load on axle, equipment such as lights, mirrors and other similar regulations.

Compare this with the rigid regulations prescribed by sections 11 and 13 of Chapter 14764 for motor vehicles operated on the public highways under certificates granted by the Railroad Commission, designed to distribute weight and protect the roads, and the reasonable basis for the difference in classification as to weight will at once appear.

I think there is a clear field for the operation of both statutes, and that is the reason why Chapter 15625 provided that nothing in that act "should be construed to repeal any part of Senate Bill No. 411," being Chapter 14764, as pointed out in the majority opinion.

Ellis, J. (Dissenting).—James Edward Tyson was arrested on a warrant issued out of the County Judge's Court for Leon County charging the offense of operating a motor vehicle carrying a load of more than sixteen thousand pounds including the weight of the motor vehicle upon State Highway No. One outside of a municipal corporation and that the vehicle was not a certified common carrier, nor a certified private contract

carrier. It is charged that the act violates Section 4 of Chapter 15625, Laws of Florida, 1931.

Tyson obtained a writ of habeas corpus and seeks release from custody upon the ground that the act in so far as it relates to the alleged offense is unconstitutional because the provision of law mentioned discriminates unfairly, arbitrarily and unreasonably against Tyson, who is the operator of a private truck for private use.

If the act is bad for the reason that it discriminates against one who operates a private truck for private use upon the highway, the petitioner should be remanded because the petition does not allege that the truck for the operation of which he was arrested and taken into custody was a private truck being operated for private use or certified as a private contract carrier. From anything to the contrary alleged in the petition, Tyson was operating an uncertified vehicle used as a common carrier or an uncertified vehicle used as a private contract carrier for which offense the warrant was issued and he was arrested.

Section 4 of Chapter 15625, *supra,* has no relation to the subject. That section relates to the payment of money into the State Treasury by the State Motor Vehicle Commissioner and amends Section 1031 Revised General Statutes as amended by Chapter 8410, Laws 1921, Section 1304 Compiled General Laws. The chapter relates to the registration of motor vehicles, the duties of the State Motor Vehicle Commissioner and the payment of fees and taxes upon the registration of motor vehicles.

Paragraph 4 of Section 3 of the Act prohibits the operating on a public highway outside of a municipal corporation of any motor vehicle carrying a load of sixteen thousand pounds including the weight of such motor vehicle and paragraph 11 of Section 4 prescribes a penalty of $500. to be paid by any person, firm or corporation violating the provisions of the act. Paragraph 17

of Section 3 prescribes a like penalty for operating over the highways of the State any motor vehicle which at the time of such operation shall not have affixed thereto the proper "license plate or tag issued by the State Motor Vehicle Commissioner." The act went into effect July 1st and was approved June 26, 1931, by the Governor.

Chapter 14764, Acts of Florida 1931, relates to the supervision and regulation by the Railroad Commission of persons, firms and corporations controlling and operating motor vehicles used in the business of transporting persons or property for compensation over the public highways of the State.

Section 2 of the act requires an "auto transportation company", operating a motor vehicle for transportation of persons or property on any public highway in the State to obtain, before doing so, a certificate of Public Convenience and Necessity or a permit from the Railroad Commission. Section 3 provides that when the "auto transportation company" operates as a common carrier of persons or property for a compensation it must obtain from the Railroad Commission a certificate that the public convenience and necessity requires such operation. Section 4 provides for obtaining from the Commission a certificate of convenience and necessity by an auto transportation company as a private contract carrier of persons or property on the public highway.

The term "Auto Transportation Company" is defined by the act to include natural persons as well as artificial persons. The only distinction made between the two classes of carriers in the application for certificates is that the common carrier is required to state the proposed time schedule of operation which the private carrier is not required to do and the latter must state the subject matter of the contracts under which the applicant desires to operate. No distinction is made as to requirements

concerning territory to be served and specification of the tonnage of trucks.

Chapter 14764, *supra,* in Section 11 provides that no truck or trailer shall be authorized under any certificate of public convenience and necessity in common carriage to carry a load in excess of 12,000 pounds and the Commission shall by the terms of all certificates issued by it limit the load weight of every truck or trailer to not more than 12,000 pounds; that the carriage by any truck of more than 12,000 pounds shall be unlawful and subject the holder of the certificate to all the penalties prescribed by law and by the provisions of this act. The penalty prescribed for violating that provision of the law is the same as that prescribed for violating paragraph 4 of section 3, Chapter 15625, *supra.*

The two provisions of law are in irreconcilable conflict, though Section 8 of Chapter 15625, *supra,* contains a provision that "nothing in this act shall be construed to repeal any part of Senate Bill 411 passed at the Regular Session of the 1931 Legislature." Senate Bill 411 became Chapter 14764, *supra.* Section 8 of Chapter 15625, *supra,* expressly repeals all laws and parts of laws in conflict with the act. The two provisions are in conflict. The language of Paragraph 4 of Section 3 Chapter 15625, *supra,* is clear in meaning and unqualifiedly prohibits the operation of any motor vehicle on a public highway outside of any municipal corporation in the State carrying a load of more than sixteen thousand pounds including the weight of such motor vehicle. There is nothing in that provision of the law to construe. Its language is plain, certain and contains no ambiguity. There is no room nor occasion for interpretation or construction and being the latest expression of the Legislature upon the subject of the operation of motor vehicles must be taken to repeal that clause in section 11 of Chap-

ter 14674, *supra,* which impliedly authorizes the Railroad Commission to grant a certificate of convenience and necessity to any "Auto Transportation Company" to operate a truck on the public highway carrying a load of twenty-four thousand pounds including the weight of the truck.

The two provisions of the two statutes cannot by any fair, liberal or strict construction be made to operate and be effective unless there is read into the statute an intent, not at all apparent by their words, that Chapter 14764, *supra,* was intended to apply to common carriers and Chapter 15625 was intended to apply to private carriers. Each motor vehicle is required to be registered and classified and carry a license plate showing the payment of registration fees and taxes provided by Chapter 15625, *supra,* but which prohibits its being used on the public highway outside any municipal corporation if it carries a load greater than sixteen thousand pounds including the weight of the vehicle.

In cases of conflicting provisions in different statutes the last enacted in point of time prevails, is the general rule. The repeal is measured by the extent of the conflict or inconsistency between the acts. See Nelden v. Clark, 20 Utah 382, 77 Am. St. Rep. 917; 36 Cyc. 1130; 25 R. C. L. 920.

The provision in Chapter 15625, paragraph 4 of Section 3, applies to all motor vehicles including trucks used for private use, or as private contract carriers or common carriers.

There was no purpose of the Legislature to create a classification of motor vehicles based upon a regulation of one class such as motor vehicles for commercial purposes for hire subject to regulation in the Railroad Commission and another class consisting of motor vehicles for private use or commercial purposes not for hire and not subject to regulation by the Railroad Commission.

Such a classification would be palpably arbitrary in the first place, because considering the preservation of the public highways and the expense of maintenance and the convenience to the public of their use there can be no difference between the use of the highway by a private citizen for his personal and private convenience and the use of the highway by a person who conducts the business of a private or common carrier for hire so far as the injury to the highway by use of it is involved.

If, on the other hand, the carrier for hire has a special advantage over the private owner of a motor vehicle because the former may charge for his service in providing transportation while the latter may not it seems to be absurd that the advantage should be further increased by permitting the former, the carriage for hire, to use motor vehicles that produce greater damage to the highways by reason of their excessive weight, while denying to the latter, the private owner, the right to use motor vehicles of the same weight on the same highway.

Those who speak of "two fields" in which the two acts of the Legislature may separately "function" seem to ignore the fact that in the case at bar the reason for the so-called classification is made to operate backwards in that the benefit resulting from such a classification operates in favor of the class whose vehicles tend to injure the road and increase the cost of maintenance but operates against the private citizen whose conservative use of the highway tends to prolong its life and reduce the cost of maintenance.

Legislatures may be, in the exuberance of heated criticism, accused of many and varied improvident acts but it is doubtful if they would enact laws that place the mark of their disapproval upon a class of people which tries to preserve public property and reduce the cost of maintenance while affording special advantages to a class

whose use of public properties tends to greater destruction and higher cost of maintenance.

The case of Miami Transit Co. v. McLin, — Fla. —, 133 South. Rep. 99, has no bearing whatsoever in my judgment upon the case at bar. There is no question of fees or taxes involved here as was involved in the case cited nor the exercise of legislative power in the matter of taxation. Nor, in my opinion, is there any question of legislative history involved so far as the two legislative acts, Chapters 14764, and 15625, *supra,* relate to the subject. The first merely deals with a legislative regulation through the legislative agency of the Railroad Commission of the business of transporting persons and property in motor vehicles over the public highway for hire. The latter act relates to the registration of all motor vehicles and expressly forbids the use of the public highway outside of municipalities by any motor vehicle carrying a load of sixteen thousand pounds including the weight of the motor vehicle.

It can be of no possible importance nor have any bearing whatsoever upon the question, that the history of the enactment of Chapter 15625, *supra,* is supposed to show that an increase in taxation was desired only. If the settled rules of statutory construction are to be departed from to the extent of visualizing a situation known to exist or recalling a history of supposed legal and legislative activities as affording a motive for legislation and then finding that as the clear meaning of words used in the particular act do not fit the supposed historical background, the words used so clear in meaning must be ignored and others substituted more in accord with assumed legislative motives, there will, of course, be no substantiality in legislative activities in the hands of a court which studies history and motives not disclosed by the unambiguous and clearly meaning words of the particular statute.

The per curiam opinion states for example that the act, Chapter 15625, *supra,* expressly provided that "such Chapter should not repeal 'any part of' Chapter 14764." The exact language of the act is as heretofore quoted in this opinion: "nothing in this Act shall be *construed* to repeal any part of Senate Bill 411 passed at the regular session of the 1931 Legislature."

The first words of Section 8 of Chapter 15625, *supra,* are "All laws or parts of laws in conflict with this Act are hereby repealed." Chapters 15625 and 14764 are not in pari materia. If there was any necessity for construction of either act the two would not be required to be construed together because they do not relate to the same or even kindred subjects.

Chapter 15625, *supra,* evinces a slowly awakening realization by the Legislature of the necessity of protecting the highways from the burden of sustaining heavy traffic by trucks for private use as well as trucks used as common carriers or private contract carriers.

Paragraph 4 of Section 3 of Chapter 15625, *supra,* is in force and according to the return of the sheriff the petitioner is held under a valid warrant charging an offense under the laws of the State.

The petitioner should be remanded to the custody of the Sheriff.

BUFORD, J., concurs.