J. B. DICKENSON, *Petitioner*, vs. W. B. CAHOON, Sheriff of Duval County, Florida, *Respondent*.

144 So. 345.

Division B.

Opinion filed October 24, 1932.

*Stanton Walker* and *W. P. Dineen*, for Petitioner;

*Cary D. Landis*, Attorney General, *H. E. Carter*, Assistant, *B. A. Meginniss, T. T. Turnbull* and *Arthur Y. Milam*, for Respondents;

*DeHoff & DeHoff*, as Amici Curiae.

DAVIS, J.—The question presented in this habeas corpus proceeding is whether or not the general weight limitation of 16,000 pounds for motor vehicles* licensed to operate on the roads of this State applies to a *certificated* private contract carrier holding a certificate of public convenience and necessity under Section 4 of Chapter 14764, Acts of 1931.

Section 11 of said Chapter 14764, Acts of 1931, contains two *independent* paragraphs which, standing set off to themselves although included in a single section of Chapter 14764, *supra*, read *seriatim* as follows:

"The vehicle weight of any truck or trailer shall in no event exceed the maximum load weight of 12,000 pounds hereinabove provided unless such load weight be reduced in the amount of such excess vehicle weight.

"The Commission is authorized to prescribe all

---

*This limitation is prescribed by Par. 4, Section 1011, Rev. Gen. Stats. 1920, as amended by Section 3 of Chapter 14625, Acts of 1931, and is as follows: "No motor vehicle shall be operated on a public highway outside of any municipal corporation in this State carrying a load of more than sixteen thousand pounds, including the weight of such motor vehicle."

reasonable rules and regulations for distribution of load weight on all trucks and trailers and the specifications and axle spacing in keeping with the physical condition of the public highways and bridges upon or over which such trucks or trailers are authorized to operate.''

Chapter 14764, *supra,* was passed by the Legislature and became a law prior to Chapter 15625, *supra.* It is obvious from a consideration of the history as well as the characteristics of Chapter 14764 as a part of the legislative policy of this State, that said Chapter, dealing as it does with a particular class of vehicles known as *certificated* vehicles, was intended to create a separate classification of such *certificated* vehicles for the purpose of regulation, supervision and added taxation. This legislative intent to set up a special code of regulations for *certificated* vehicles as distinguished from all others licensed to use the highways, is clearly disclosed by Section 8 of Chapter 15625, which provides in part: ''but nothing in this Act shall be construed to repeal any part of Senate Bill 411 (Chapter 14764) passed at the regular session of the 1931 Legislature. Provided further that nothing in this Act shall repeal, alter or diminish the mileage tax or fees now provided by law for motor vehicles coming under the supervision of the Railroad Commission of the State of Florida.''

Consequently, we have upon the statute books of this State two separate and independent statutes relating to the supervision and regulation of motor vehicles. The older of these two statutes deals with the licensing, taxation and incidental regulation of motor vehicles of every kind except those subsequently classified and separately dealt with by Chapter 13700, Acts of 1929, and its re-enactment and revision as Chapter 14764, Acts of 1931.

Chapter 14764, Acts of 1931, as a *regulatory* Act is

complete in itself. Without reference to any other statute of this State, this special Act dealing with certificated motor vehicles, contains within its four corners, all the principles of regulation and supervision which are to be applied to those certificated vehicles falling within its purview.*

General and Special laws regulating operation of motor vehicles should be construed together, the duty of the Courts being to find a reasonable field of operation for both, without destroying their evident intent, but preserving the force of each, in harmony with the whole course of legislation. See State ex rel. Luning v. Johnson, 71 Fla. 363, 72 Sou. Rep. 477.

We therefore hold that Chapter 14764, Acts of 1931, providing for the supervision and regulation of persons, firms, corporations and associations owning, controlling, operating or managing motor vehicles used in the business of transporting persons or property for compensation over the public highways of this State, providing for regulations of safety and proper operation affecting the use of said highways and the preservation thereof, etc., is an independent statutory enactment, which so far as its regulatory provisions are concerned, was intended to prescribe and put into operation an effective

---

*The fact that a portion of Chapter 15625, Acts of 1931, used the phrase, "no motor vehicles," and became a law subsequent to the enactment of Chapter 14764 discloses no legislative intent that by making reference to "vehicles" that Chapter 15625 is to be construed to apply to the *certificated* vehicles covered by Chapter 14764. Had Chapter 15625 never been passed at all, the fact that Chapter 14764 was enacted subsequent to Section 1011, Rev. Gen. Stats., as it stood unamended, would not have repealed Section 1011, R. G. S. This is so because Chapter 14764 classifies and segregates for special treatment and regulation, and therefore takes out of the purview of Section 1011 R. G. S., as a regulatory measure the particular motor vehicles with which it deals, leaving Section 1011 in full force and effect as to all other motor vehicles not so segregated and taken out from under it for special consideration and treatment. And for the same reason, without the aid of what is expressly declared in Section 8 of Chapter 15625, the latter Chapter would not in the absence of some express or necessarily implied indication to that effect, repeal any regulatory provision of Chapter 14764.

scheme of separate regulation and supervision, based upon a special classification of all those vehicles which were required to be certificated under said Chapter 14764, *supra*, before being granted authority to operate on the highways for compensation.

And that such separate regulation based upon a legislative determination to deal with certificated vehicles as a special class is constitutional, was expressly held by this Court in the two previous cases of Tyson v. Stoutamire, 104 Fla. 505, 140 Sou. Rep. 454, and Riley v. Lawson, opinion filed August 24, 1932, 106 Fla. 521, 143. So. 619.

On the other hand, Chapter 7275, Acts of 1917, as amended by Chapter 8410, Acts of 1921, Chapter 10182, Acts of 1925, and Chapter 15625, Acts of 1931 (now Section 1285 C. G. L., 1011 R. G. S.), is principally a licensing and taxing measure intended for application to motor vehicles generally. The stated statutory regulations set forth in Section 1011 Rev. Gen. Stats., as amended, governing the operation of motor vehicles which are required to be registered and licensed under these statutes, were mainly designed and intended to operate as an incident to defining the scope of the several kinds of licenses which the statute provides to be issued upon payment of the revenue exactions thereby prescribed to be paid upon registration.

Consequently, while the *licensing and taxing* provisions of amended Section 1011 R. G. S., supra, are applicable to *all* vehicles using the roads of this State, including those certificated under Chapter 14764, Acts of 1931, as well as others (See State ex rel. McJunkin vs. McLin, Commissioner, 103 Fla. 965, 138 Sou. Rep. 480), the fact that the Legislature in enacting Chapter 14764, *supra,* deliberately undertook to *separately* classify, and lay down *special* regulations concerning the operation of

certificated vehicles using the highways of this State as the means of conducting a business of haulage for hire, necessarily sets up a new and complete field of regulations for such particular vehicles. This new scheme of regulation, being complete in itself, the effect thereof is to render inapplicable to certificated vehicles those statutory regulations as to weight, speed and the like which for the government of motor vehicles generally have incidentally been included in the licensing and taxation statutes just referred to.*

Having reached the conclusion just stated to the effect that whatever regulations as to weight limits, speed and the like, must be found in the express or necessarily implied provisions of Chapter 14764, supra, in order to be applicable to vehicles *certificated* and doing business under Chapter 14764, *supra,* we turn to a consideration of the last mentioned Act for the purpose of ascertaining

---

*Section 1011 R. G. S. (1285 C. G. L.) from its inception was a registration and licensing act, containing a scale of fees to be charged for registration and licensing, coupled with a number of "provisos" in the form of traffic regulations to govern the licensed and registered vehicles. But that traffic regulations were merely an incident to the registration and licensing and therefore properly connected with the subject of the Act as expressed in Chapter 8410, Acts of 1921, was expressly held by this Court when the 1921 Act was attacked as being unconstitutional in that it embraces two subjects and matters of regulation not connected with the main subject, which was registration and revenue. All of such contentions were overruled in State ex rel. Bonsteel v. Allen, 83 Fla. 215, 91 Sou. Rep. 104, on the theory that licensing and registration of motor vehicles related to operation, and the prescription of weight and speed limits was matter proper connected with a requirement for registration and licensing because the weight and speed limits in reality defined the scope and character of the license which the State granted in consideration of the payment of the registration fee. For example, a license to operate a truck considered in connection with the proviso limiting the weight of 16,000 pounds, meant a license to operate a truck of not more than 16,000 pounds, etc. Chapter 14764, Acts of 1931, relating to certificated vehicles goes further and prescribes a scheme of regulation *per se.* This scheme is complete in itself and in some respects is inconsistent with those incidental regulations which attach to the general license to operate a motor obtained by registration of it. A license under the general motor vehicle law confers no right to transact business intended to be regulated by Chapter 14764. To transact the business covered by Chapter 14764 a special license, or certificate, is required, and the regulations which apply to certificated vehicles are therefore the regulations which are incidental to the certificates issued under Chapter 14764, and not incidental to the registrations under Section 1011 as amended.

whether or not it contains within its terms any provision as to weight limits which may be legally applied to a private contract carrier such as the prisoner at the bar seeking his release on habeas corpus purports to be.

Our conclusion on this score is that the last two paragraphs of Section 11 of said Chapter 14764, supra, furnish a complete answer to this question.

By such paragraphs it is provided that the weight of "any" truck or trailer shall in no event exceed the maximum load weight of 12,000 pounds, unless the excess in the vehicle weight be made up by a proportionate reduction in the load weight.

Or to state it in another way, the legal effect of the provision found in next to the last paragraph of Section 11 is to permit a vehicle not exceeding 12,000 pounds in weight to carry a load of not exceeding 12,000 pounds in weight, subject to the proviso that the vehicle weight limit may be increased provided that the weight of the load is reduced in an exact proportion corresponding to the increase in vehicle weight. In practical operation this paragraph means that no combined weight of load and vehicle shall ever exceed 24,000 pounds for a certificated vehicle holding a certificate or permit under Chapter 14764.

Nor is the application of this paragraph limited to certificated vehicles operating only in common carriage.*

*Section 11 of the Act is long and involved. The fact that it is divided into separate paragraphs, each of which stands alone, although included in this one section, is significant of an intent to deal with a separate idea in each separate paragraph. Some significance must also be given to the fact that in this section express reference is several times specifically made to operations under certificates "in common carriage." This reference occurs in several places, while in other places in the same section no stated limitation such as "in common carriage" is found. We are therefore entitled to infer that references to motor vehicles and certificates intended to be general in every case except where the limitation "in common carriage" or the like is used, thereby indicating an intent to make the reference a limited one only. For this reason the last two paragraphs of section 11 should not be construed as being confined to certificates or vehicles "in common carriage" only, but as applying to "any" (which means all) vehicles falling within the scope of the Act for regulatory purposes.

On the contrary, it appears to be clear that it, in terms, applies to "any" truck and trailer, which reference must be construed to mean "any" truck or trailer operating under Chapter 14764, whether in common carriage or in private contract carriage, or in permitted carriage.

Chapter 14764, supra, provides for the issuance of three classes of licenses for use of the highways of this State for the conduct of a business of haulage of persons and property for hire.* But as to each class, it is expressly provided in the statute that the Railroad Commission shall have authority to make rules and regulations "applicable to any and all" auto transportation companies. (Section 7 of the Act). It is furthermore provided that both the statute and the lawful regulations of the Commission thereunder shall be enforceable through criminal proceedings (Section 15) as well as by revocation of the certificate or permit to operate.

In the case at bar the petitioner is charged with the violation of paragraph 4 of Section 1011, Rev. Gen. Stats., as amended by Chapter 15625, Acts of 1931, and not with the violation of any portion of Chapter 14764, Acts of 1931, or any lawful rule or regulation as to weight limits promulgated by the Railroad Commission thereunder, restricting the weight limit of the *certificated* vehicles of petitioner to an amount under the otherwise permissible statutory gross limit of 24,000 pounds, which is applicable in the absence of some special regulation prescribed by the Railroad Commission within the scope of its power to make reasonable rules and regulations applicable to any and all auto transportation companies.

---

*These three classes are: (1) certificates of public convenience and necessity to operate in common carriage as provided in Section; (2) certificates of public convenience and necessity to operate as private contract carriers under Section 4; (3) permits to operate certain classes of "for hire" motor vehicles as provided in Section 5. The Act (Chapter 14764) governs both the conduct of the business and the manner and extent of the use of the public highways. Riley v. Lawson, *supra*.

Since the provisions of paragraph 4 of said Section 1011 R. G. S., *supra,* as amended by Section 3 of Chapter 15625, Acts of 1931, are not applicable to any *certificated* vehicle subject to regulation under Chapter 14764, Acts of 1931, the stated charge against petitioner fails and he must be ordered discharged from custody.

We are not unmindful of the contention made by the Attorney General and his associate counsel to the effect that Chapters 14764 and 15625 are in pari materia and should be construed together. But even so, an application of thus rule of construction requires us to ascertain and declare a separate field of operation for Chapter 14764 when it is obvious that the legislative intent to provide effective and plenary separate regulations of certificated carriers cannot otherwise be made effective. Payne v. Payne, 82 Fla. 219, 89 Sou. Rep. 538; City of St. Petersburg v. Pinellas County, 87 Fla. 315, 100 Sou. Rep. 509; State v. Simpson, 94 Fla. 789, 114 Sou. Rep. 542.

The argument of petitioner, to the effect that any difference in permissible weight limits for contract carriers as against common carriers, results in an unconstitutional discrimination between the two classes is not passed upon.

Petitioner discharged.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND BROWN, J., concur in the opinion and judgment.