HOLT, Associate Justice.
The constitutionality of section 323.01, Revised Florida Statutes of 1941, F.S.A., and particularly section 323.04 thereof and rule 3 of the Florida Railroad and Public Utilities Commission has been brought into question by the petition for certiorari in this case on the ground that said statute and said rule violate Article II and Article III, Section 1, of the Constitution of the State of Florida, F.S.A., and that the provisions thereof contravene the due process and equal protection clause of the 14th amendment of the Constitution of the United States.
This act which -we are called upon to construe in the light of the assault made upon it, is the fundamental statute under which the Florida Railroad and Public Utilities Commission now operates and has been doing so since it was enacted into law in the year 1931. Under it the Commission certificates or registers more than 12,000 motor vehicles operating within the State of Florida. This figure does not include common carriers or other vehicles operating entirely within municipalities of the state and their adjacent territory, nor does it include certain other exempted vehicles which need not be described here.
Certain phases of the so-called Transportation Act of Florida, enacted prior to the one under attack (1929), were declared unconstitutional by the Supreme Court of the United States in the famous case of Smith v. Cahoon, 283 U.S. 553, 51 S.Ct. 582, 75 L.Ed. 1264, and the present act was passed to cure the irregularities pointed out by that court in the opinion mentioned.
The bedrock case defining the powers, duties and responsibilities of the respondent Commission is that of Central Truck Lines v. Railroad Commission, 118 Fla. 526, 160 So. 22, 23, and we deem it significant that its pertinent language should be quoted here:
“The Railroad Commission has been made the repository of a general grant of regulatory powers as to both rail and motor carrier services performed in the state of Florida. It supervises and regulates railroads (and to some extent water carrier service) by virtue of the long-standing statutes of this state on that subject. See sections 6692-6751, C.G.L., sections 4607-4665, R.G.S. [F.S.A. §§ 350.01 to 350.66]. It supervises and regulates auto transportation companies and their peculiar services by virtue of chapter 13700, Acts 1929, and chapter 14764, Acts 1931, which reenacted and superseded the 1929 act on the same subject. All of these statutes are in contemplation of law statutes in pari ma-teria, and have for their object the appropriate regulation of both rail and motor transportation services in their relation to each other and in relation to the carrying on of commerce in the state in so far as the subject of transportation is concerned.
“As evidence of the legislative purpose to be served by chapter 14764, supra, that act contains an express requirement to the effect and in exercising its functions under the auto transportation law the Railroad Commission shall (not may) take into consideration the effect that the exercise of its powers of regulation and supervision of *813 motor carriers may have upon transportation as a whole within any particular territory as to which the licensing of motor vehicle facilities may be sought. Another object to be achieved by that act (perhaps its most important one) is to foreclose the inordinate use of the public highways as a means of conducting carrier service for profit in cases where there is no showing of public convenience or necessity therefor under the facts of a particular case wherein permission is sought for a certificate approving such use by a particular applicant.”
It is the contention of the petitioners that the 1931 act, supra, did not cure the purported defects pointed out by the Supreme Court of the United States in Smith v. Ca-hoon, supra, and upon this basis contend that the law is unconstitutional.
These are three cases filed by the respondents in the court below wherein respondent Railroad and Public Utilities Commission of Florida seek injunctions against the petitioners, permanently enjoining them in transporting freight, commodities and property for compensation upon the highways of the state of Florida without proper authority therefor and in violation of Chapter 323, F.S.A., and the laws and regulations of the Florida Railroad and Public Utilities Commission, supra. The three bills of injunction are identical except for the various individual charges applicable only to one of the petitioners. The respondents claim that the petitioners •entered into an “arrangement” termed "truck rental agreement” which is an unconstitutional subterfuge to contravene the provisions of chapter 323, F.S.A., and rules 2 and 3 of the respondents whereby the petitioners (defendants below) furnish a driver and vehicle in which the vehicle is leased ■only for the estimated duration of the one way or single trip to deliver the consignor’s products to the consignee, and the driver ■of such vehicle is put on the payroll by the ■consignee only for the period and duration of the so-called “arrangement.” In all of these instances (there are many of which the respondents complain) provision is made for transportation service over and "beyond the leasing rental of a naked vehir ■cle to a shipper for his own private use and operation. The drivers under these purported one way trip leases are under the supervision and control of petitioners rather than the consignee-lessee. Under the terms of the “arrangement” the rate of compensation is stated in various ways, either by freight rate or by rate and cents per mile with a provision for additional mileage. Fuel, oil, and maintenance are furnished by petitioners in all instances, public liability and property damage insurance is furnished by petitioners. In some agreements the name of the leased driver is indicated, but this is usually omitted. The termination of the lease “arrangement” is optional by either party and the equipment is in the possession of the lessee for the one way trip only. With exception of loading or unloading lessee-consignee has no direction nor control of vehicle or driver during the course of the one way transportation. The driver has not been previously or subsequently employed by the lessee and the driver is generally selected or furnished by the petitioners. Under the “arrangement” the lessee is not responsible to anyone for observance of safety regulations required by the Interstate Commerce Commission or the payment of mileage taxes required of the state of Florida. Authorized carriers that are required to pay mileage taxes and procure expensive for hire tags pursuant to the laws of Florida have suffered serious loss of revenue by reason of the operations conducted by the petitioners under this arrangement. Under the “arrangement” the trip lease terminates when the products are delivered to the consignee leaving the petitioners free to further lease the vehicle to another shipper. The “arrangement” provides a transportation service over and above the leasing rental of a vehicle which is detrimental to the authorized common carrier operating in the state. All of which respondents contend is contrary to the provisions of chapter 323, Florida Statutes Annotated, and the rules and regulations of the Florida Railroad and Public Utilities Commission. This, in brief, sums up the position of the respondent and the situation which it faces and which it sought to end by filing its bills for injunction. The petitioners (defendants below) *814 filed their respective motions to dismiss and after due deliberation the learned chancellor below denied the motions to dismiss and ordered the petitioners to answer the bills of complaint. It is from these orders that petitioners have filed their petition for cer-tiorari in which they attack the act and rule mentioned and described.
As to the constitutionality of the statute, supra, chapter 323, petitioners cite the case of Riley v. Lawson, 106 Fla. 521, 143 So. 619, 625, and by doing so seek to distinguish same from the case under consideration. However, the Supreme Court clearly stated therein that the sole question concerned was whether or not statute on its face was constitutional and in so doing said:
“ * * * the sole question we are concerned with is whether or not the statute on its face is constitutional. We have no question here as to impropriety or illegality of the statute’s application to appellee’s particular business of carriage. If the power existed in the legislative department of the government to pass such an act, it must be upheld by the courts, notwithstanding that there admittedly may be a possibility of administrative abuse of the powers delegated to the regulatory commission authorized to act under it.”
Other cases in which the act has been upheld and declared to be constitutional are Central Truck Lines v. Railroad Commission, 146 Fla. 521, 1 So.2d 470; Dickinson v. Cahoon, 107 Fla. 155, 144 So. 345; and Tyson v. Stoutamire, 104 Fla. 505, 140 So. 454, 456.
In all of the decisions just cited, it is significant to observe that this court noted that the Legislature corrected the irregularities which the United States Supreme Court pointed out in the Florida statute (chapter 13700, acts of 1929) in the case of Smith v. Cahoon, supra, and we specifically stated that the 1931 act did overcome the stated objections to the prior law. In doing so the court said, Tyson v. Stoutamire, supra:
“Likewise, the history, intent, and purpose of chapter 14764 is also so clear and well known that we are probably authorized to judicially notice the fact that its enactment was directly brought about because of the supposed effect of the decision of the Supreme Court of the United States in the case of Smith v. Cahoon, 283 U.S. 553, 51 S.Ct. 582, 75 L.Ed. 1264, which was supposed to have, to a large extent, rendered invalid the 1929 law on the subject of certificated vehicles.”
This should dispose of the attack on the act in question. We have gone extensively into the matter because of its importance to the transportation system of the state and its relation to the act under question and the powers, duties and responsibilities of the respondent Florida Railroad and Public Utilities Commission under it, and to permanently lay at rest insofar as it is possible, the question of its validity so that the public, the state, and the economics of our business and transportation system will not be adversely affected by any legal uncertainties, which would surely follow were we to do otherwise.
As to rule 3 of the Florida Railroad and Public Utilities Commission, it is contended by petitioners that the same vests unrestricted discretion upon the respondent Commission in that any waiver of standards by the Interstate Commerce Commission to carriers certificated by such Commission results as an automatic waiver of standards by the respondent Commission. This position cannot be maintained. The provisions of the rule itself refute such conclusion. This court, in the case of Florida Motor Lines, Inc., v. State Railroad Co., 101 Fla. 1018, 132 So. 851, 858, squarely answers this proposition in the following language:
“The power of Congress over interstate commerce and post roads and as to federal instrumentalities is not subject to state authority; but the state may forbid the use of its public highways in the business of transportation for hire even in interstate commerce, if no unjust discrimination is thereby perpetrated and federal instrumen-talities are not hindered. Likewise the state may permit, limit, and regulate the use of its public roads for transportation thereon for hire, whether inter or intra state, provided no unjust discrimination is practiced and no undue burden or inter *815 ference is put upon interstate commerce and federal instrumentalities are not interfered with. The highways being the property of the state, it may make any charge for the use of the roads that is not expressly or impliedly forbidden by the controlling law federal or state. * * *
“In the absence of paramount federal regulations, the number and the nature, size, weight, and operation of the vehicles that may be used in transportation for hire on the public highways of the state, may be regulated by statute even as to interstate commerce over such highways, where such commerce is not discriminated against or unduly burdened.”
It is thus clearly recognized that the state may not interfere with interstate commerce, but may supervise and regulate the use of its own highways. See also State ex rel. L. & L. Freight Lines, Inc., v. Douglass, 124 Fla. 579, 169 So. 389, State ex rel. R. C. Motor Lines v. Florida Railroad Commission, 123 Fla. 345, 166 So. 840.
The order denying the motions to dismiss was proper and in accordance with law, and the chancellor below should grant a reasonable time to petitioners within which to file their respective answers to the bills of complaint, after which the cases can proceed on whatever facts that may be presented in defense of the allegations of the complaints.
Certiorari denied.
ROBERTS, C. J., and TERRELL, THOMAS, HOBSON, MATHEWS and DREW, JJ., concur.