### GRAY v. TAMIAMI TRAIL TOURS, Inc.

Circuit Court, Bay County, Civil Appeal.

January 8, 1964.

Mercer P. Spear, Panama City, and James E. Wharton and A. Pickens Coles of Coles, Himes & Talley, Tampa, for appellant.

W. Fred Turner, Lynn Haven, for appellee.

John R. Alexander, Assistant Counsel, Florida Public Utilities Commission, as amicus curiae.

ROBERT L. McCRARY, Circuit Judge.

This cause was instituted in the lower court by the appellee, as plaintiff, filing her complaint alleging that the appellant-defendant transported the plaintiff for compensation aboard one of its buses from Miami to Panama City; that plaintiff checked her suitcase with defendant's agent prior to boarding the bus; but that defendant lost or misplaced it and did not redeliver it to her in Panama City. The defendant answered, alleging that it was without knowledge as to whether the suitcase was tendered to it, but in any event, defendant's liability is limited to $50 pursuant to the tariffs on file with and the rules of the Florida Public Utilities Commission (formerly named the Florida Railroad and Public Utilities Commission, and hereinafter referred to as "the commission").

After the taking of testimony in the lower court, a judgment was entered in favor of the plaintiff for $300, and this appeal ensued. The commission appeared before this court on appeal as amicus curiae inasmuch as the validity of certain rules and regulations of the commission were challenged in the lower court.

The sole issue presented by this appeal is whether a motor common carrier of passengers can limit its liability for loss of baggage by filing appropriate tariffs with the commission pursuant to relevant statutes and regulations of the commission. After a careful consideration of the thoroughly prepared arguments and briefs of counsel and the record on appeal, this court has concluded that the foregoing question must be answered in the affirmative.

Chapter 350, Florida Statutes, sets forth the establishment of powers and duties of the commission, and in addition, contains detailed sections concerning handling of passengers' baggage by common carriers in Florida. Although "common carrier" is defined in chapter 350 as including railroads, steamships, passenger terminals and other related agencies, it has been held that in interpreting chapter 350, analogous provisions of chapter 323, which pertains to the regulation in detail of common carriers by motor vehicle, are in contemplation of law, statutes in pari materia, and their combined object is the appropriate regulation of both rail and motor transportation services in and relation to each

other and in relation to the carrying on of commerce in this state insofar as the subject of transportation is concerned. Central Truck Lines, Inc. v. Railroad Commission, Fla. 1935, 160 So. 22; Stewart v. Mack, Fla. 1953, 56 So.2d 811. See also 27 Fla. Jur., Railroad etc., Commission, section 5. Chapter 323 grants to the commission the power to regulate common carriers by motor vehicle in the state of Florida and sets forth various detailed provisions concerning the manner of exercising the powers vested thereby in the commission. It has been stipulated that at all times material herein, the defendant, Tamiami Trail Tours, Inc., was a certificated common carrier by motor vehicle authorized by its certificates of public convenience and necessity issued to it by the commission, to transport passengers and their baggage for compensation over various prescribed routes within the state of Florida. Accordingly, the only references that will be made to the statutes and rules of the commission will be those that pertain to transporting passengers and their baggage, and the publication of various rates and regulations pertaining thereto.

Section 323.07 authorizes the commission to regulate auto transportation companies and to " . . . fix or approve the rates, fares, charges, classifications, rules and regulations for such auto transportation companies . . . " Section 323.08 *requires* a certificated common carrier to file with and obtain approval by the commission of all rates, fares, charges, classifications and schedules under which it operates, and that no new rate shall be put into effect without an order of the commission authorizing the same. Section 323.09 provides that whenever any certificated common carrier is found to be violating any provision of chapter 323 or "any of the rules or regulations prescribed by the commission" the commission is authorized to suspend, revoke, or alter any certificate of such carrier and may also impose a penalty for each offense up to $5,000.

Section 323.19 specifically provides —

> No common carrier auto transportation company shall charge, demand, collect or receive a greater or less or different compensation for the transportation of persons or property, or for any service in connection therewith, than the rates, fares, and charges applicable to such company *as specified in its tariffs and classification filed with and approved by the commission and in effect at the time; nor shall any such company* refund or remit in any manner or by any device any portion of the rates, fares, or charges so specified, or *extend to any person, firm, co-partnership, or corporation, or other organization, or association, privileges or facilities in the transportation of persons or property except such as are regularly and uniformly extended to all;* and no such company shall directly or indirectly issue, give, tender or honor any free fares except to its bona fide officers, agents, employees, and members of their immediate families; provided, that auto transportation companies under this chapter may exchange free transportation within the limits of this section. (Italics added.)

Pursuant to the powers vested in the commission by section 323.07, the commission has promulgated various rules and regulations, part V of which relates to auto transportation companies such as is involved in this proceeding. Rule 5.100 states that such rules are supplementary "to the statutes contained in chapter 323, Florida Statutes." Rule 5.210 provides that "all passenger and express tariffs naming rates and fares to be charged shall be filed with and approved by the commission before same may be effective." The ensuing rules provide for the method and manner of transporting passengers and their baggage. Rule 5.225, a certified copy of which was introduced into evidence in the lower court, expressly provides the limitation of liability of a certificated carrier in the transporting of baggage for a paying passenger utilizing such carrier's services. The full text of the rule is set forth herein as follows —

> Baggage not to exceed a total weight of one hundred fifty (150) pounds nor exceeding Fifty ($50.00) Dollars for each piece and One Hundred ($100.00) Dollars in the aggregate in value, shall be checked and carried free of charge for each adult passenger. Children traveling on less than adult fare shall be limited on the above basis in the proportion that the child's fare bears to the adult fare. Baggage exceeding such limitations as to value shall be so declared by the passenger and charged for at the rates shown in the excess valuation tariff of the carrier on file with the commission. Baggage exceeding such limitations as to weight shall be charged for at the rates shown in the baggage tariff on file with the commission. Baggage excess in weight or valuation shall not be transported charges collect on delivery, but the charges shall be paid in advance. No allowance shall be permitted on tickets purchased for the sole purpose of avoiding payment of excess baggage. Rates for excess baggage shall be filed with the commission and kept available for public information in bus stations.

Pursuant to the provisions of sections 323.08 and 323.19, and in conformity with the requirements of rule 5.210 of the commission, the defendant, Tamiami Trail Tours, Inc., along with other participating intrastate certificated carriers, filed its tariff with the commission, and the commission thereupon approved the terms and conditions of such tariff. A certified copy of this tariff was introduced into evidence in the lower court. Basically, the terms of the tariff follow the provisions of rule 5.225 in that the liability of the carrier is limited to $50 for each piece of baggage and $100 total liability where more than one article of baggage is carried free of charge for each adult passenger.

It is noted that section 350.12, in setting forth the duties and powers of the commission, provides —

> (1) It shall be the duty of said commissioners:
>
> (a) To make reasonable and just rates of freight and passenger tariffs to be observed by all railroads, railroad companies and common carriers doing business in this state over their respective lines. This clause

shall include the right to prescribe how much baggage may be carried free with each passenger and the rates of excess baggage.

(b) To make reasonable and just rules and regulations to enforce observance of their tariffs for the handling, transportation and delivery of all kinds of freight and for the transportation of passengers.

As to the validity of the rules and regulations promulgated by the commission, section 350.12 provides in part —

". . . All rules and regulations made and prescribed by the commissioners shall be made prima facie evidence in the manner that the schedules are made prima facie evidence. Every rule, regulation, schedule or order heretofore or hereafter made by the commissioners shall be deemed and held to be within their jurisdiction and their powers, and to be reasonable and just and such as ought to have been made in the premises and to have been properly made and arrived at in due form of procedure and such as can and ought to be executed, unless the contrary plainly appears on the face thereof or be made to appear by clear and satisfactory evidence, and shall not be set aside or held invalid unless the contrary so appears. All presumptions shall be in favor of every action of the commissioners and all doubts as to their jurisdiction and powers shall be resolved in their favor, it being intended that the laws relative to the railroad commissioners shall be deemed remedial laws to be construed liberally to further the legislative intent to regulate and control public carriers in the public interest . . ."

In compliance with the statutory requirements and the rules of the commission promulgated thereunder, the defendant filed its tariff with the commission and the tariff was approved by the commission as required by the statute. The tariff specifically provides that in intrastate travel within the state of Florida, three pieces of baggage will be transported without additional charge when not exceeding the free weight allowance or the free value allowance. The tariff then specifically provides that the free weight allowance for each adult ticket is 150 pounds and the free value allowance is limited to $50 for each piece, but not to exceed $100 for all baggage checked on each adult ticket.

The appellee contends before this court in its brief that the commission has no valid authority to promulgate a rule limiting liability of a common carrier in connection with transporting passengers' baggage and further alleges that such a rule is unconstitutional. In Stewart v. Mack, Fla. 1953, 66 So.2d 811, petitioner contended that chapter 323, Florida Statutes, which is the motor carrier act involved in the instant proceeding and a rule of the commission involved in that case, was in violation of the due process and equal protection clauses of the Florida and the United States constitutions. In upholding the constitutionality of chapter 323 and the authority vested in the commission to promulgate rules to carry out the provisions of chapter 323, the Supreme Court stated —

The bedrock case defining the powers, duties and responsibilities of the respondent Commission is that of Central Truck Lines v. Railroad Commission, 118 Fla. 526, 160 So. 22, 23, and we deem it significant that its pertinent language should be quoted here —

> "The Railroad Commission has been made the repository of a general grant of regulatory powers as to both rail and motor carrier services performed in the state of Florida. It supervises and regulates railroads (and to some extent water carrier service) by virtue of the long-standing statutes of this state on that subject. See sections 6692-6751, C.G.L., sections 4607-4665, R.G.S. (F.S.A. §§ 350.01 to 350.66). It supervises and regulates auto transportation companies and their peculiar services by virtue of chapter 13700, Acts 1929, and chapter 14764, Acts 1931, which re-enacted and superseded the 1929 act on the same subject. All of these statutes are in contemplation of law statutes in pari materia, and have for their object the appropriate regulation of both rail and motor transportation services in their relation to each other and in relation to the carrying on of commerce in the state in so far as the subject of transportation is concerned."

## The court further held —

Other cases in which the act has been upheld and declared to be constitutional are Central Truck Lines v. Railroad Commission, 146 Fla. 521, 1 So. 2d 470; Dickinson v. Cahoon, 107 Fla. 155, 144 So. 345; and Tyson v. Stoutamire, 104 Fla. 505, 140 So. 454, 456.

In all of the decisions just cited, it is significant to observe that this court noted that the legislature corrected the irregularities which the United States Supreme Court pointed out in the Florida statute (chapter 13700, acts of 1929) in the case of Smith v. Cahoon, supra, and we specifically stated that the 1931 act did overcome the stated objections to the prior law. In doing so the court said, Tyson v. Stoutamire, supra —

> "Likewise, the history, intent, and purpose of chapter 14764 is also so clear and well known that we are probably authorized to judicially notice the fact that its enactment was directly brought about because of the supposed effect of the decision of the Supreme Court of the United States in the case of Smith v. Cahoon, 283 U. S. 553, 51 S.Ct. 582, 75 L.Ed. 1264, which was supposed to have, to a large extent, rendered invalid the 1929 law on the subject of certificated vehicles.

> *"This should dispose of the attack on the act in question. We have gone extensively into the matter because of its importance to the transportation system of the state and its relation to the act under question and the powers, duties and responsibilities of the respondent Florida Railroad and Public Utilities Commission under it, and to permanently lay at rest insofar as it is possible, the question of its validity so that the public, the state, and the economics of our business and transportation system will not be adversely affected by any legal uncertainties, which would surely follow were we to do otherwise.* (Italics added.)

It is clear from the foregoing language of Stewart v. Mack that the constitutionality of chapter 323 is no longer subject to question and that the commission is clearly vested with the power and the duty to promulgate rules and regulations to carry out

an orderly regulation of transportation companies operating within the state of Florida. See also State v. King, Fla. 1957, 93 So.2d 368, and Fogarty Brothers Transfer, Inc. v. Boyd, Fla. 1959, 109 So.2d 883.

In the instant case, the plaintiff had the option of declaring additional value at the time her luggage was tendered to the defendant carrier and paying for insurance to indemnify her against loss of the baggage at the increased valuation. This option, of course, is pursuant to the provision of rule 5.225 of the commission and the relevant portions of the tariff previously discussed herein. The plaintiff, however, elected to not declare a valuation in excess of $50 and the defendant, therefore, contends that its liability is limited to that figure and stands ready to tender said sum to the plaintiff. It has long been held that a shipper and carrier may lawfully agree on the value of goods shipped and that such agreement is binding on both parties and will be enforced by the courts of this state. In Atlantic Coast Line R. Co. v. Coachman, Fla. 1910, 52 So. 377, the court stated in regard to such an agreement —

> Such a contract, fairly entered into whereby the shipper and the carrier agree on a valuation of the property carried with a rate of freight based on condition that the carrier assumes liability only to the extent of the agreed valuation simply fixes the rate of freight and liquidates the damages, and will be upheld as a proper and lawful mode of securing a true proportion between the amount for which the carrier may be responsible and the freight he receives and also of protecting himself against extravagant and fanciful valuations. Atlantic Coast Line R. Co. v. Dexter & Conner, 50 Fla. 180, 39 South. 634, 111 Am. St. Rep. 116; Hart v. Pennsylvania R. Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L.Ed. 717; Harvey v. Terre Haute & Indianapolis R. C., 74 Mo. 538.

A similar holding is set forth in Atlantic Coast Line R. Co. v. Hinely-Stephens Co., Fla. 1913, 60 So. 749, and in the case of Seaboard Airline Ry. Co. v. Schenck, Fla. 1929, 119 So. 517. In regard to a declared value of goods by the shipper at the time the shipment is tendered to the carrier, the court stated in Noone v. Southern Express Co., Fla. 1920, 83 So. 607, 608 —

> Common honesty, good faith, and fair dealing, it seems to the writer, would limit the plaintiff in his recovery to the value as declared by him, though made at a time when it was to his advantage to make it small, and now greatly to his disadvantage when suing for the recovery of damages for the loss of his property by one having exclusive control of it;
> . . .

A review of the foregoing authorities clearly establishes that chapters 323 and 350, Florida Statutes, give to the commission the power and the duty to promulgate rules and regulations governing motor carriers that operate within the state of Florida. Pursuant to this rule making power, the commission promulgated rule 5.225, limiting to $50 in value the baggage that may be

transported free by a motor carrier of passengers in connection with transporting the owner of said baggage for compensation between points in Florida. There has been no showing in the lower court or before this court that such a rule violates any constitutional or statutory provision of the laws of Florida. On the contrary, in addition to the authorities discussed herein, similar statutes, rules and tariffs have been construed and upheld by other jurisdictions and by the federal courts in construing analogous federal statutes and rules and regulations of the Interstate Commerce Commission. See Anno., Liability of Motor Carrier For Loss Of Passenger's Baggage Or Packages, 68 A.L.R.2d. 1350; Argo v. Southeast Greyhound Lines, Inc., 1945, 33 S.E.2d. 730; Tennessee Coach Company v. Carter, 182 S.W.2d. 959; Kellett v. Alega Coach Lines, Inc., Ala. 1948, 37 So.2d 137; Pennsylvania Greyhound Lines v. Wells, D.C. Mun.App. 1945, 41 A.2d 837; Gray v. Pennsylvania Greyhound Lines, Pa. 1955, 110 A.2d 892; Neece v. Richmond Greyhound Lines, Pa. 1955, 110 A.2d, 892; Beaumont v. Pennsylvania Railroad Company, 1954, 10 C.C.H. Federal Carrier's Cases, 2337; Boston and Maine Railroad v. Hooker, 233 U.S. 97; New York Central Ry. Co. v. Beaham, 242 U.S. 148; and Galveston, Harrisburg and San Antonio Ry. Co. v. Woodbury, et al., 254 U.S. 357.

It is, therefore, the opinion and judgment of this court that the trial court erred in refusing to uphold the validity of rule 5.225 and, therefore, the decision of the lower court must be reversed and this cause is remanded with instructions to enter judgment against the defendant in the amount of $50, pursuant to the requirements of rule 5.225 of the Florida Public Utilities Commission and the tariff on file with and approved by the commission pursuant to said rule.