688 S.E.2d 569

**The STATE, Petitioner,**

v.

**Reginald Craig SWEAT, Respondent.**

**and**

**The State, Petitioner,**

v.

**Arthur Bryant, III, Respondent.**

**No. 26763.**

Supreme Court of South Carolina.

Heard Nov. 4, 2009.
Decided Jan. 25, 2010.

---

340

General Counsel Robert E. Bogan and Assistant General Counsel Rachel D. Erwin, both of Blythewood, for petitioner.

Richard Pearce and Benjamin Moore, both of Aiken, for respondents.

R. Hawthorne Barrett and Danny C. Crowe, both of Turner, Padget, Graham & Laney, of Columbia, for Amicus Curiae Municipal Association of South Carolina.

Justice BEATTY.

This Court granted the State's petition for a writ of certiorari to review the decision of the Court of Appeals in *State v. Sweat*, 379 S.C. 367, 665 S.E.2d 645 (Ct.App.2008), in which the Court of Appeals interpreted section 56–5–4140 of the South Carolina Code,[1] a statute regulating the maximum gross weight of vehicles driven on South Carolina roads. We affirm as modified.

## FACTUAL/PROCEDURAL HISTORY

The parties agreed to the relevant facts underlying this case. On February 14, 2006, Reginald Craig Sweat, a sanitation truck driver for the City of Aiken, was stopped and cited by a State Transport Police (STP) officer for exceeding the allowable gross weight for the three-axle sanitation truck he was driving. According to the citation, the vehicle weighed 57,100 pounds, which the officer claimed exceeded the allowable gross weight of 50,600 pounds. The 50,600 pound amount was calculated based on an initial three-axle amount of 46,000 pounds plus a ten percent scale tolerance of 4,600.

On April 10, 2006, a different STP officer stopped and cited Arthur Bryant, III, another driver for the City of Aiken, for driving the same sanitation truck in excess of the allowable gross vehicle weight. The citation indicates the vehicle weighed 56,900 pounds, which exceeded the allowable gross weight of 50,600.

At the time the STP issued the citations, section 56–5–4140 provided in relevant part:

(1)(a) The gross weight of a vehicle or combination of vehicles, operated or moved upon any interstate, highway or section of highway shall not exceed:

(1) Single-unit vehicle with two axles ................. 35,000 lbs.

(2) **Single-unit vehicle with three axles** .................. **46,000 lbs.**

(3) Single-unit vehicle with four axles .................... 63,500 lbs.

---

1. S.C.Code Ann. § 56–5–4140 (2006 & Supp. 2008).

Except, on the interstate, vehicles must meet axle spacing requirements and corresponding maximum overall gross weights, not to exceed 63,500 lbs., in accordance with the table in (b) plus tolerances.

(4) Single unit vehicle with five or more axles ....... 65,000 lbs.

Except, on the interstate, vehicles must meet axle spacing requirements and corresponding maximum overall gross weights, not to exceed 65,000 lbs., in accordance with the table in (b) plus tolerances.

(5) Combination of vehicles with three axles ......... 50,-000 lbs.

(6) Combination of vehicles with four axles .......... 65,-000 lbs.

(7) Combination of vehicles with five or more axles ... 73,280 lbs.

The gross weight imposed upon any highway or section of highway other than the interstate by two or more consecutive axles in tandem articulated from a common attachment to the vehicle and spaced not less than forty inches nor more than ninety-six inches apart shall not exceed thirty-six thousand pounds, and no one axle of any such group of two or more consecutive axles shall exceed the load permitted for a single axle. The load imposed on the highway by two consecutive axles, individually attached to the vehicle and spaced not less than forty inches nor more than ninety-six inches apart, shall not exceed thirty-six thousand pounds and no one axle of any such group of two consecutive axles shall exceed the load permitted for a single axle.

**The ten percent enforcement tolerance specified in Section 56–5–4160 applies to the vehicle weight limits specified in this section except, the gross weight on a single axle operated on the interstate may not exceed 20,000 pounds, including all enforcement tolerances;** the gross weight on a tandem axle operated on the interstate may not exceed 35,200 pounds, including all enforcement tolerances; and the overall gross weight for vehicles operated on the interstate may not exceed 75,185 pounds, including all enforcement tolerances except as provided in (b).

**(b) Vehicles with an overall maximum gross weight in excess of 75,185 pounds may operate upon any highway or section of highway in the Interstate System up to an overall maximum of 80,000 pounds in accordance with the following:**

**The weight imposed upon the highway by any group of two or more consecutive axles may not, unless specially permitted by the Department of Public Safety exceed an overall gross weight produced by the application of the following formula:**

$$W = 500 \ (LN/N{-}1 + 12N + 36)$$

In the formula W equals overall gross weight on any group of two or more consecutive axles to the nearest 500 pounds, L equals distance in feet between the extreme of any group of two or more consecutive axles, and N equals number of axles in the group under consideration.

As an exception, two consecutive sets of tandem axles may carry a gross load of 68,000 pounds if the overall distance between the first and last axles of the consecutive sets of tandem axles is 36 feet or more. The formula is expressed by the following table:

| Distance in feet between the extremes of any group of 2 or more consecutive axles | Maximum load in pounds carried on any group of 2 or more consecutive axles | | | | |
|---|---|---|---|---|---|
| | 2 axles | **3 axles** | 4 axles | 5 axles | 6 axles | 7 axles |
| 4 | 35,200 | | | | | |
| 5 | 35,200 | | | | | |
| 6 | 35,200 | | | | | |
| 7 | 35,200 | | | | | |
| 8 and less | 35,200 | 35,200 | | | | |
| more than 8 | 38,000 | 42,000 | | | | |
| 9 | 39,000 | 42,500 | | | | |
| 10 | 40,000 | 43,500 | | | | |
| 11 | | 44,000 | | | | |
| 12 | | 45,000 | 50,000 | | | |
| 13 | | 45,500 | 50,500 | | | |
| 14 | | 46,500 | 51,500 | | | |
| 15 | | 47,500 | 52,000 | | | |
| 16 | | 48,000 | 52,500 | 58,000 | | |

| | | | | | |
|---|---|---|---|---|---|
| 17 | 48,500 | 53,500 | 58,500 | | |
| 18 | 49,500 | 54,000 | 59,000 | | |
| 19 | 50,500 | 54,500 | 60,000 | | |
| 20 | 51,000 | 55,500 | 60,500 | 66,000 | |
| 21 | 51,500 | 56,000 | 61,000 | 66,500 | |
| 22 | 52,500 | 56,500 | 61,500 | 67,000 | |
| 23 | 53,000 | 57,500 | 62,500 | 68,000 | |
| 24 | 54,000 | 58,000 | 63,000 | 68,500 | 74,000 |
| 25 | 54,500 | 58,500 | 63,500 | 69,000 | 74,500 |
| 26 | 55,500 | 59,500 | 64,000 | 69,500 | 75,000 |
| 27 | 56,000 | 60,000 | 65,000 | 70,000 | 75,500 |
| 28 | 57,000 | 60,500 | 65,500 | 71,000 | 76,500 |
| 29 | 57,500 | 61,500 | 66,000 | 71,500 | 77,000 |
| 30 | 58,500 | 62,000 | 66,500 | 72,000 | 77,500 |
| 31 | 59,000 | 62,500 | 67,500 | 72,500 | 78,000 |
| 32 | 60,000 | 63,500 | 68,000 | 73,000 | 78,500 |
| 33 | | 64,000 | 68,500 | 74,000 | 79,000 |
| 34 | | 64,500 | 69,000 | 74,500 | 80,000 |
| 35 | | 65,500 | 70,000 | 75,000 | |
| 36 | | 68,000 | 70,500 | 75,500 | |
| 37 | | 68,000 | 71,000 | 76,000 | |
| 38 | | 68,000 | 71,500 | 77,000 | |
| 39 | | 68,000 | 72,500 | 77,500 | |
| 40 | | 68,500 | 73,000 | 78,000 | |
| 41 | | 69,500 | 73,500 | 78,500 | |
| 42 | | 70,000 | 74,000 | 79,000 | |
| 43 | | 70,500 | 75,000 | 80,000 | |
| 44 | | 71,500 | 75,500 | | |
| 45 | | 72,000 | 76,000 | | |
| 46 | | 72,500 | 76,500 | | |
| 47 | | 73,500 | 77,500 | | |
| 48 | | 74,000 | 78,000 | | |
| 49 | | 74,500 | 78,500 | | |
| 50 | | 75,500 | 79,000 | | |
| 51 | | 76,000 | 80,000 | | |
| 52 | | 76,500 | | | |
| 53 | | 77,500 | | | |
| 54 | | 78,000 | | | |
| 55 | | 78,500 | | | |
| 56 | | 79,500 | | | |
| 57 | | 80,000 | | | |

(2) Except on the interstate highway system:

(a) Dump trucks, dump trailers, trucks carrying agricultural products, concrete mixing trucks, fuel oil trucks, line trucks, and **trucks designated and constructed for special type work or use are not required to conform to the axle spacing requirements of this section. However, the vehicle is limited to a weight of twenty thousand pounds for each axle plus scale tolerances and the maximum gross weight of these vehicles may not exceed the maximum weight allowed by this section for the appropriate number of axles, irrespective of the distance between axles, plus allowable scale tolerances.**

(b) Concrete mixing trucks which operate within a fifteen-mile radius of their home base are not required to conform to the requirements of this section. However, these vehicles are limited to a maximum load of the rated capacity of the concrete mixer, the true gross load not to exceed sixty-six thousand pounds. All of these vehicles shall have at least three axles each with brake-equipped wheels.

(c) Well-drilling, boring rigs, and tender trucks are not required to conform to the axle spacing requirements of this section. However, the vehicle is limited to seventy thousand pounds gross vehicle weight and twenty-five thousand pounds for each axle plus scale tolerances.

S.C.Code Ann. § 56–5–4140 (2006) (emphasis added).

In conjunction, section 56–5–4160(A) states, in part: "In determining whether the limits established by Section 56–5–4130 or 56–5–4140 have been exceeded, the scaled weights of the gross weight of vehicles and combinations of vehicles are considered to be not closer than ten percent to the true gross weight, except as otherwise provided in Section 56–5–4140." S.C.Code Ann. § 56–5–4160(A) (Supp. 2007). Additionally, the parties agreed the sanitation truck driven by the Respondents met the definition of a "truck designated and constructed for special type work" pursuant to section 56–5–4140(2)(a).

At the hearing before the magistrate, Sweat and Bryant ("Respondents") made a motion to dismiss both citations on the ground section 56–5–4140(2)(a) permits them to operate the city's sanitation truck at a maximum gross vehicle weight of 66,000 pounds. Respondents reasoned that subsection

(2)(a) constituted an exception to the general provisions of the statute which permitted each axle of the "special use" truck to carry 20,000 pounds plus a ten percent scale tolerance. Respondents also contended the reference in subsection (2)(a) to "the maximum weight allowed by this section for the appropriate number of axles, irrespective of the distance between the axles" referred to the table in section 56–5–4140(1)(b).

In response, the State asserted the reference in subsection (2)(a) to the "maximum weight allowed by this section" referred to section 56–5–4140(1)(a)(2), which limited the gross weight of the three-axle, sanitation truck to 46,000 pounds plus ten percent scale tolerances.

In two summary orders, the magistrate found Respondents were guilty of exceeding the allowed gross weight for the sanitation truck.

On appeal, the circuit court reversed the convictions and remanded the cases for entry of a not guilty verdict. In so ruling, the circuit court concluded the statutory exception of subsection (2)(a) limited a special use truck to a maximum gross weight of 20,000 pounds per axle plus scale tolerances. The circuit court specifically rejected the State's interpretation of the statute, finding such a reading would contravene the statutory construction rule that a court must follow a specific provision over general language in the statute. Thus, "applying the specific statutory provisions ... for a garbage truck, as a vehicle constructed for a special type of work, means it can weigh in at up to 22,000 pounds per axle."

Subsequently, the circuit court denied the State's motion for reconsideration pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. In the order, the circuit court judge reiterated the prior ruling and clarified that "[s]ection 56–5–4140(2)(a) is the applicable specific statutory exception to the general gross weight limits contained in 56–5–4140(1)(a)(2)." The court concluded that subsection (2)(a) meant that the sanitation truck was permitted a weight of 20,000 pounds per axle plus scale tolerances, not to exceed the maximum gross weight allowed by the table in subsection (1)(b).

The State appealed the circuit court's order to the Court of Appeals. In a unanimous decision, the Court of Appeals affirmed the order of the circuit court. *State v. Sweat,* 379

S.C. 367, 665 S.E.2d 645 (Ct.App.2008). Emphasizing the application of the rules of statutory construction, the Court of Appeals found:

> Subsection (1)(a) sets the general per-axle standard for vehicles in South Carolina. Subsection (2)(a) provides a different standard for specific types of vehicles when they are not operated on the interstate highway system. Subsection (2)(a) does precisely what an exception is intended to do: it identifies a category to which the general rule does not apply.

*Id.* at 383, 665 S.E.2d at 654.

In terms of explanation, the Court of Appeals determined the phrase in subsection (2)(a) "maximum gross weight of these vehicles may not exceed the maximum weight allowed by *this section*" referred to section 56–5–4140 as whole which includes the formula and table in subsection (1)(b). *Id.* at 383, 665 S.E.2d at 655 (emphasis added). The Court of Appeals noted the "maximum allowable weight for a three-axle vehicle under subsection (1)(b) is 80,000 total pounds," which represents the largest allowable weight found anywhere in section 56–5–4140. *Id.* Ultimately, the Court of Appeals concluded "[s]pecial use vehicles can exceed the general rule requirements of subsection (1)(a), but the exception in no event allows those vehicles to surpass the maximum figures found in subsection (1)(b)." *Id.* at 383–84, 665 S.E.2d at 655.

In rejecting the State's position, the Court of Appeals stated "[t]he State's proposed interpretation, which elevates subsection (1)(a) over all others and effectively renders subsection (2)(a) meaningless, flies in the face of the plain language of the statute." *Id.* at 384–85, 665 S.E.2d at 655. The Court of Appeals believed that if the General Assembly intended subsection (2)(a) to be an exception only as to tandem axle vehicles, as the State averred, the General Assembly could have included language expressly limiting the nature of the exception contained in subsection (2)(a). *Id.* at 384, 665 S.E.2d at 655.

As the final part of its analysis, the Court of Appeals rejected the State's policy argument that the circuit court's interpretation would authorize the operation of grossly overweight vehicles. *Id.* at 385, 665 S.E.2d at 655. The Court of

Appeals found the State had not demonstrated that affirming the circuit court's decision would adversely affect the state's roads or public safety. The Court of Appeals explained that under subsection (1)(b), the maximum total weight of a vehicle is 80,000 with a ten percent scale tolerance of 8,000. *Id.* Thus, the Court of Appeals believed there was no merit to the State's fear that drivers could operate vehicles weighing more than 100,000 pounds on South Carolina's roads. *Id.*

Extending its policy analysis, the Court of Appeals concluded that public policy considerations supported the circuit court's interpretation given the General Assembly "obviously determined there was a legitimate reason to create separate, higher weight allowances for special use vehicles." *Id.* The Court of Appeals found that one purpose for the special category was to "permit larger loads in order to limit the trips these vehicles are required to make." *Id.* at 385, 665 S.E.2d at 655–56. In creating the exception, the Court of Appeals believed the General Assembly "recognized that sanitation trucks and other special use vehicles are designed and built to handle heavier loads safely to reduce the number of trips per truck." *Id.* at 385, 665 S.E.2d at 656.

This Court granted the State's petition for a writ of certiorari to review the decision of the Court of Appeals.

## DISCUSSION

In challenging the decision of the Court of Appeals, the State raises the following five arguments:

1. The Court of Appeals erroneously presumed that the Legislature intended to radically increase the maximum gross vehicle weights of the special work or use vehicles of section 56–5–4140(2)(a) rather than recognize a moderate increase only as to tandem axle weight limitation. This holding, in turn, violates the Equal Protection clause.

2. The Court of Appeals inappropriately used section 56–5–4140(1)(b) from which it established a single, maximum gross vehicle weight for all the special use vehicles of section 56–5–4140(2)(a).

3. The Court of Appeals failed to give deference to the state agency's well-considered interpretation of a statute, which the agency was charged with enforcing.

4. The Court of Appeals' interpretation of section 56-5-4140(2)(a) leads to an absurd result when reconciling it with section 56-5-4140(2)(b), thus, making section 56-5-4140(2)(b) meaningless surplusage.

5. The Court's interpretation is in conflict with 2008 legislation amending section 56-5-4140.

Although the State raises five separate arguments,[2] we believe a decision in this case involves a single question: What is the maximum allowable weight for vehicles designated and constructed for special use or work under section 56-5-4140?

In answering this question, it is necessary to consider the following rules of statutory construction.

■ "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *Broadhurst v. City of Myrtle Beach Election Comm'n*, 342 S.C. 373, 380, 537 S.E.2d 543, 546 (2000).

■ The Court should give words "their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Sloan v. S.C. Bd. of Physical Therapy Exam'rs*, 370 S.C. 452, 469, 636 S.E.2d 598, 607 (2006). "A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers." *Browning v. Hartvigsen*, 307 S.C. 122, 125, 414 S.E.2d 115, 117 (1992). In interpreting a statute, the language of the statute must be read in a sense which harmonizes with its subject matter and accords with its general purpose. *Hitachi Data Sys. Corp. v. Leatherman*, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992).

---

**2.** With respect to the State's equal protection challenge and reference to subsection (2)(b), we find these arguments were not properly preserved for this Court's review. A review of the Appendix reveals that neither the trial court nor the appellate courts ruled on these issues. *See Pye v. Estate of Fox*, 369 S.C. 555, 564, 633 S.E.2d 505, 510 (2006) ("It is well settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved."); *Kiawah Prop. Owners Group v. Pub. Serv. Comm'n of South Carolina*, 359 S.C. 105, 113, 597 S.E.2d 145, 149 (2004) (finding an issue raised for the first time in a petition for rehearing was not preserved).

"Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law." *Bennett v. Sullivan's Island Bd. of Adjustment,* 313 S.C. 455, 458, 438 S.E.2d 273, 274 (Ct.App.1993).

■■ Courts will reject a statutory interpretation which would lead to a result so plainly absurd that it could not have been intended by the Legislature or would defeat the plain legislative intention. *Unisun Ins. Co. v. Schmidt,* 339 S.C. 362, 368, 529 S.E.2d 280, 283 (2000). "A statute should be so construed that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous." *In re Decker,* 322 S.C. 215, 219, 471 S.E.2d 462, 463 (1995) (citation omitted).

■■ "The construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Dunton v. S.C. Bd. of Exam'rs in Optometry,* 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987). Even so, an administrative construction "affords no basis for the perpetuation of a patently erroneous application of the statute." *Monroe v. Livingston,* 251 S.C. 214, 217, 161 S.E.2d 243, 244 (1968).

Applying the above-outlined rules to section 56–5–4140, we agree with the ultimate conclusion of the Court of Appeals. As will be discussed, we find the Court of Appeals correctly interpreted the statute at issue with the exception of one minor finding.

In analyzing the specific provisions of section 56–5–4140, it is essential to consider the overall purpose of this statutory scheme. This type of statute has "at least two purposes, namely, the protection of the highway and highway structures and the protection of other highway users from the hazard of vehicles which may be less than manageable by reason of overloading." J.A. Bryant, Jr., Annotation, *Automobiles: Construction and Operation of Statutes or Regulations Restricting the Weight of Motor Vehicles or Their Loads,* 45 A.L.R.3d 503, 508 (1972 & Supp.2009) (discussing state cases involving the construction and operation of statutes or regulations restricting generally the weight of motor vehicles or their loads).

With this purpose in mind, it is apparent that the General Assembly enacted section 56–5–4140 to regulate the maximum weight of vehicles that traverse South Carolina roads in an effort to protect the infrastructure of the state road system and to protect individuals travelling on these roads.

We believe the General Assembly effectuated this purpose in section 56–5–4140 by establishing the maximum weight for all classifications of vehicles. As seen in subsection (1)(a), the General Assembly created the general standard for all vehicles. Recognizing that weight may be more evenly distributed when the number of axles increases,[3] the General Assembly provided for increased weight amounts in direct proportion to the number of axles on a vehicle.

Subsection (1)(b) is a logical progression of this reasoning. In keeping with the purpose of the statute in conjunction with the weight distribution principle, the General Assembly set forth a table in (1)(b) which provides corresponding maximum weight loads dependent upon the number of axles and the spacing of these axles. In other words, the load of a vehicle may progressively increase with the addition of axles and the extension of the distance between these axles.

However, a driver may not exceed the maximum allowable weight limit merely by adding axles and increasing the distances between these axles. Cognizant of the maximum weight that a road could withstand, the General Assembly specifically limited the maximum weight for any vehicle to 80,000 pounds plus a ten percent scale tolerance of 8,000 pounds. As indicated by the table, the only vehicles authorized to transport the maximum 88,000 pound load are those with four to seven axles.

Although the General Assembly set an ultimate weight limit of 88,000 pounds, it created exceptions to the axle-spacing requirements of subsections (1)(a) and (1)(b). These exceptions recognize that certain vehicles are uniquely constructed to withstand greater weight despite having the identical number of axles as another vehicle. Thus, vehicles that satisfy the

---

**3.** *See* Federal Highway Administration, U.S. Department of Transportation, *Bridge Formula Weights*, January 1994, at 14 (discussing Bridge Formula and recognizing that allowable weight for vehicles depends on the number of axles a vehicle has and the distance between those axles).

criteria of these exceptions should not be subject to the general weight restriction standards established by subsection (1)(a).

The State agrees that Respondents, at the time of citations, were operating trucks "constructed for special type work or use," which placed the sanitation truck squarely within the exception created in subsection (2)(a). As previously stated, subsection (2)(a) states that this type of vehicle is:

> not required to conform to the axle spacing requirements of this section. However, the vehicle is limited to a weight of twenty thousand pounds for each axle plus scale tolerances and the maximum gross weight of these vehicles may not exceed the maximum weight allowed by this section for the appropriate number of axles, irrespective of the distance between axles, plus allowable scale tolerances.

S.C.Code Ann. § 56–5–4140(2)(a) (2006). By the plain terms of the statute, special use trucks may carry a load weight of 20,000 pounds per axle plus a ten percent scale tolerance. As the statute states, this authorized increase in load weight for special use vehicles is not without limitation. By drafting the last sentence in subsection (2)(a), the General Assembly deliberately "capped" the maximum allowable weight of these vehicles at an amount directly proportional to the number of axles, irrespective of the distance between the axles.

We find the Court of Appeals correctly determined that this maximum weight restriction is calculated by referencing the table in (1)(b) and, not the general standards provided in (1)(a).

Assuming that the General Assembly purposefully created exceptions to weight restrictions for uniquely constructed vehicles, then it would be nonsensical to assess their maximum weight limits using the standards applicable to "regular" vehicles. See Dickinson v. Cahoon, 107 Fla. 155, 144 So. 345 (1932) (analyzing state statute regulating weight and speed of motor vehicles and concluding that Legislature intended to create a separate classification of certified vehicles for the purpose of regulation, supervision, and added taxation). Because special use vehicles are constructed to take advantage of increased weight limits, their weight loads should not be restricted to those of all general vehicles. To do so would

completely eliminate the exception created in subsection (2)(a). *See Commonwealth v. Clyde*, 302 Pa.Super. 383, 448 A.2d 1093, 1095 (1982) (affirming dismissal of charges of operating an overweight construction vehicle where General Assembly "found it necessary to totally exempt such a vehicle from the size and weight restriction"), *appeal dismissed as improvidently granted*, 503 Pa. 2, 467 A.2d 1287 (1983).

In view of our interpretation of section 56–5–4140, we hold the sanitation truck driven by Respondents did not exceed the maximum allowable weight. Reading subsection (2)(a) in conjunction with the table in (1)(b), the three-axle vehicle was authorized to weigh 66,000 pounds. This amount represents a calculation of 20,000 pounds per axle with a ten percent scale tolerance of 6,000 pounds. Significantly, the manufacturing information on the door jam of the sanitation truck indicates that the vehicle can sustain a weight limit of 66,000 pounds.

However, unlike the Court of Appeals, we conclude 66,000 pounds is the maximum weight for the three-axle sanitation truck not 80,000 pounds plus a ten percent weight tolerance. A review of the table in (1)(b) reveals that only vehicles with four to seven axles may carry an 88,000 pound maximum load.

Finally, we note that the General Assembly has twice amended section 56–5–4140 subsequent to the decision of the Court of Appeals. As the State points out in its fifth argument, the General Assembly amended section 56–5–4140 in 2008.[4] The State contends this amendment indicates that "the legislature is inclined to grant only modest increases in gross vehicle weights through amendments." Additionally, the State claims if the Legislature intended the Court of Appeals' interpretation of subsection (2)(a) there would be no reason to provide unprocessed forest products hauler's vehicles with an increased scale tolerance given they would be already entitled to a maximum weight of 88,000 pounds.

---

4. The 2008 amendment redesignated subsection (A), and added the following two provisions relating to enforcement tolerances:

> (2) Enforcement tolerance is fifteen percent for a vehicle or trailer transporting unprocessed forest products or only on noninterstate routes.

> (3) Enforcement tolerance is fifteen percent for a vehicle or trailer transporting sod only on noninterstate routes.

Act No. 234, 2008 S.C. Acts 2143, 2147.

We find this amendment is inapposite and does not affect the disposition of the instant case. First, the amendment provided nonsubstantive changes in that it renumbered certain provisions of section 56–5–4140. Second, the amendment increased the scale tolerance for two specific vehicles, those that transport unprocessed forest products and those that transport sod, using a "vehicle or trailer." Because the General Assembly did not revise the provision with respect to special use vehicles, we disagree with the State that this amendment is indicative of the legislative intent.

We would also note that this year the General Assembly amended section 56–5–4140(2)(a), the subsection at issue in this case.[5] Because this amendment became effective after the STP officer issued Respondents' citations, we find, and the State conceded, that this amendment would not be applicable to facts of the instant case. Accordingly, we express no opinion as to the import of this amendment in future cases involving the statute at issue.

## CONCLUSION

Although a state agency's enforcement of a statute is usually afforded deference, we find the STP incorrectly interpreted section 56–5–4140. Considering the purpose of section 56–5–4140 within the context of the rules of statutory construction, we find subsection (2)(a) was promulgated to exempt uniquely designed special use vehicles from the general weight restrictions in subsection (1)(a). Because the maximum allowable weight for a special use vehicle is "capped" at 88,000 pounds, the exception does not permit Respondents to operate the sanitation truck with unlimited amounts of weight. Thus, the

---

5. The 2009 amendment to 56–5–4140(B)(1), which became effective on June 2, 2009, provides:

Dump trucks, dump trailers, trucks carrying agricultural products, concrete mixing trucks, fuel oil trucks, line trucks, and trucks designated and constructed for special type work or use are not required to conform to the axle spacing requirements of this section. However, the vehicle is limited to a weight of twenty thousand pounds for each axle plus scale tolerances and the maximum gross weight of these vehicles may not exceed the maximum weight allowed **by subsection (A)(1)** for the appropriate number of axles, plus allowable scale tolerances.

Act No. 60, 2009 S.C. Acts —— (emphasis added).

exception claimed by Respondents is legitimate and does not defeat the underlying purpose of the statute to protect the infrastructure of the roadways and those travelling on these roadways.

Based on the foregoing, we hold the Court of Appeals correctly interpreted section 56–5–4140. Therefore, we affirm its decision. However, to the extent the Court of Appeals erred in finding that the table in subsection (1)(b) permitted the three-axle sanitation truck to carry a maximum weight of 80,000 plus a ten percent scale tolerance, we modify its decision to correct this error.[6]

Accordingly, the decision of the Court of Appeals is

**AFFIRMED AS MODIFIED.**

WALLER, Acting Chief Justice, and Acting Justices JAMES E. MOORE and TIMOTHY MARTIN CAIN, concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES, concurring.

I concur in the majority's decision which affirms the Court of Appeals' decision reversing the citations issued to the respondents. I write separately, however, because I believe S.C.Code Ann. § 56–5–4140(1)(b) is irrelevant to our decision as the sanitation truck did not have tandem axles. The relevant provision, in my view, is § 56–5–4140(2)(a). The dump truck was of a "special type," and had three axles.

---

**6.** In our view, Justice Pleicones misreads section 56–5–4140(1)(b). Section 56–5–4140(b) does not limit its application to tandem axles. Instead, it merely includes an exception for tandem axles. More specifically, section 56–5–4140(1)(b) sets forth a formula to be used in computing the allowable weight of "any group of two or more consecutive axles." If this phrase referred to tandem axles, then there would be no need to create an exception to the formula's application for "tandem axles" in the next paragraph.

As for the maximum allowable weight, we agree that the language of section 56–5–4140(2)(a) is somewhat contradictory. However, it is clear that the section states in part that "the maximum gross weight of these vehicles may not exceed the maximum weight allowed by this section for the appropriate number of axles ... plus allowable scale tolerances." Thus, 80,000 pounds plus an 8,000 pound scale tolerance equals 88,000 pounds.

Accordingly, its maximum weight was 66,000 pounds pursuant to that section.[7]

Moreover, I disagree with the majority that a vehicle can ever exceed 80,000 pounds under the statute. In my view, (2)(a) allows 20,000 pounds per axle up to the maximum allowed under either (1)(a) or (1)(b), plus scale tolerances. The ten percent tolerance permitted under (1)(a) is capped at 75,185, and no scale tolerance is permitted under (1)(b), which sets a maximum weight of 80,000 pounds regardless of the number of tandem axles. I therefore disagree with the majority that a vehicle could lawfully weigh 88,000 pounds under (1)(b).

---

7. 3 axles × 20,000 pounds + 6,000 pounds (10% scale tolerance).