781 S.E.2d 914

**Michael Heath BOLIN, # 341806, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, Respondent.**

Appellate Case No. 2014–000461.
No. 5361.

Court of Appeals of South Carolina.

Heard Sept. 8, 2015.
Decided Nov. 12, 2015.
Withdrawn, Substituted and Refiled Feb. 24, 2016.
Rehearing Denied Feb. 24, 2016.

Trent Neuell Pruett, of Pruett Law Firm, of Gaffney, for appellant.

Christina Catoe Bigelow, of the South Carolina Department of Corrections, of Columbia, for respondent.

GEATHERS, J.

Appellant Michael Bolin (Inmate) challenges a decision of the South Carolina Administrative Law Court (ALC) upholding a determination of the South Carolina Department of Corrections (DOC) that Inmate must serve eighty-five percent of his sentence before he is eligible for early release, discharge, or community supervision. Inmate argues that the eighty-five-percent requirement of section 24–13–150 of the South Carolina Code (Supp.2015) does not apply to any of the offenses to which he pled guilty because they are not considered "no-parole offenses." We reverse the ALC's decision.

## FACTS/PROCEDURAL HISTORY

On May 15, 2012, Inmate pled guilty to possession of methamphetamine, second offense (possession), possession of methamphetamine with intent to distribute, second offense (intent to distribute), conspiracy to manufacture methamphetamine, second offense (conspiracy), and unlawful possession of a pistol. He was sentenced to five years' imprisonment on each methamphetamine offense and one year of imprisonment for the weapon offense, to run concurrently.

Curiously, after Inmate began serving his sentence, DOC informed him that he was eligible for parole on his conspiracy conviction and intent to distribute conviction under section 44–53–375(B) of the South Carolina Code (Supp.2015) but if he was not granted parole, these offenses would thereafter be treated as no-parole offenses under section 24–13–100 of the South Carolina Code (2007) and section 24–13–150 of the

South Carolina Code (Supp.2015).[1] Section 24–13–150 requires an inmate convicted of a no-parole offense to serve at least eighty-five percent of his sentence before he is eligible for early release, discharge, or community supervision.[2] Section 24–13–100 defines the term "no-parole offense," in pertinent part, as "a class A, B, or C felony."[3] Whether a felony is a Class A, B, or C felony depends on the maximum sentence for the felony—a Class A felony is a felony punishable by not more than thirty years, a Class B felony is a felony punishable by not more than twenty-five years, and a Class C felony is a felony punishable by not more than twenty years. S.C. Code Ann. § 16–1–20 (2003).[4]

Subsequently, Inmate filed a Step 1 grievance form with DOC, stating that DOC incorrectly calculated his projected release date by requiring him to serve eighty-five percent of his sentence and, thus, treating his conspiracy and intent to distribute offenses as no-parole offenses under section 24–13–100. Inmate asserted that the amended provisions of section 44–53–375(B) preclude DOC from treating these offenses as no-parole offenses.[5] After this grievance was denied, Inmate filed a Step 2 grievance form, which was also denied.

---

1. Inmate committed these offenses on April 7, 2011, and July 12, 2011, respectively. Both parties agree that Inmate's other offenses, simple possession of methamphetamine, second offense, and possession of a pistol, are not subject to the eighty-five-percent requirement.

2. Section 24–13–150(A) states, in pertinent part, "Notwithstanding any other provision of law, ... an inmate convicted of a 'no[-]parole offense' ... is not eligible for early release, discharge, or community supervision ... until the inmate has served at least eighty-five percent of the actual term of imprisonment imposed."

3. Section 24–13–100 was enacted in 1995. *See* Act No. 83, 1995 S.C. Acts 551.

4. *See also* S.C .Code Ann. § 16–1–30 (2003) ("All criminal offenses created by statute after July 1, 1993, must be classified according to the maximum term of imprisonment provided in the statute and pursuant to Sections 16–1–10 and 16–1–20, except as provided in Section 16–1–10(D)."); S.C. Code Ann. § 16–1–10(D) (Supp.2015) (listing offenses that are exempt from classification).

5. Inmate also complained that DOC incorrectly classified his conspiracy offense as a violent offense. DOC ultimately resolved this particular part of Inmate's grievance in his favor.

Inmate appealed DOC's determination to the ALC, and the ALC upheld the determination. This appeal followed.

## ISSUE ON APPEAL

Did the ALC err in concluding that Inmate must serve at least eighty-five percent of his sentence before he is eligible for early release, discharge, or community supervision?

## STANDARD OF REVIEW

■ Section 1–23–610(B) of the South Carolina Code (Supp. 2015) sets forth the standard of review when this court is sitting in review of a decision by the ALC on an appeal from an administrative agency. Specifically, section 1–23–610(B) allows this court to reverse the ALC's decision if it violates a constitutional or statutory provision or is affected by any other error of law.[6] Here, the sole issue on review involves a question of statutory interpretation, which is a question of law "subject to de novo review." *Barton v. S.C. Dep't of Prob. Parole & Pardon Servs.*, 404 S.C. 395, 414, 745 S.E.2d 110, 120 (2013).

■ Further, while the interpretation of a statute by the agency charged with its administration "will be accorded the most respectful consideration," an agency's interpretation "affords no basis for the perpetuation of a patently erroneous application of the statute." *State v. Sweat*, 386 S.C. 339, 351, 688 S.E.2d 569, 575–76 (2010) (quotation marks omitted).

## LAW/ANALYSIS

■ Inmate contends that the eighty-five-percent requirement of section 24–13–150 does not apply to his conspiracy and intent to distribute convictions because they are no longer considered no-parole offenses by virtue of the 2010 amendment to section 44–53–375(B), which addresses the possession, manufacture, or trafficking of methamphetamine. We agree.

■ As previously stated, section 24–13–150 requires an inmate who has been convicted of a no-parole offense to serve eighty-five percent of his sentence before he is eligible for

---

6. S.C. Code Ann. § 1–23–610(B)(a), (d) (Supp.2015).

"early release, discharge, or community supervision."[7] In addition to the eighty-five-percent requirement, at least three additional consequences attach to a conviction for an offense categorized as "no-parole": (1) no-parole offenders are given significantly less credits for good conduct, work, or education than other offenders, (2) no-parole offenders are required to participate in a community supervision program before their sentences are considered completed, and (3) no-parole offenders are required to serve eighty percent of their sentences before they are eligible for work release.[8]

Prior to June 2, 2010, conspiracy to manufacture methamphetamine, second offense, and possession with intent to distribute methamphetamine, second offense, were in fact considered no-parole offenses. In other words, section 44–53–375(B) imposed a maximum sentence of thirty years for a second

---

7. In contrast, most inmates who have been convicted of a parolable, nonviolent offense are required to serve only twenty-five percent of their sentences before becoming eligible for parole. *See* S.C. Code Ann. § 24–21–610 (2007) (requiring a prisoner convicted of a parolable, nonviolent offense to serve "at least one-fourth of the term of a sentence" before the Parole Board "may ... parole" the prisoner). Of course, an inmate's eligibility for parole merely gives the Parole Board the *authority* to grant parole—the decision to grant or deny parole is within the Parole Board's discretion, as indicated by the legislature's use of the word "may" in section 24–21–610. *See Robertson v. State*, 276 S.C. 356, 358, 278 S.E.2d 770, 771 (1981) ("Ordinarily, 'may' signifies permission and generally means the action spoken of is optional or discretionary."). Notably, if the Parole Board denies parole to an eligible inmate, it must review the inmate's case on a yearly basis. *See* S.C .Code Ann. § 24–21–620 (2007) ("Upon an affirmative determination, the prisoner must be granted a provisional parole or parole. Upon a negative determination, the prisoner's case shall be reviewed every twelve months thereafter for the purpose of such determination.").

8. *See* S.C. Code Ann. § 24–13–125(A) (Supp.2015) (requiring no-parole offenders to serve eighty percent of their sentences before becoming eligible for work release); S.C. Code Ann. § 24–13–210(A), (B) (Supp. 2015) (allowing twenty days of good conduct credits for each month served for inmates convicted of parolable offenses versus three days for each month served for no-parole offenders); S.C. Code Ann. § 24–13–230(A), (B) (Supp.2015) (allowing zero to one day of work or education credit for every two days of employment or enrollment for inmates convicted of parolable offenses versus six days for every month of employment or enrollment for no-parole offenders); S.C. Code Ann. § 24–21–560(A) (2007) (requiring no-parole offenders to participate in a community supervision program).

offense of possession with intent to distribute methamphetamine or conspiracy to manufacture methamphetamine. *See* Act No. 127, 2005 S.C. Acts 1497 (increasing the maximum sentence from twenty-five to thirty years). Accordingly, these offenses were considered Class A felonies and, thus, no-parole offenses. *See* S.C. Code Ann. § 16-1-20(A) (2003) (stating that a person convicted of a Class A felony must be imprisoned for "not more than thirty years"); S.C. Code Ann. § 24-13-100 (2007) (including a Class A felony in the definition of no-parole offense).

However, on June 2, 2010, the Omnibus Crime Reduction and Sentencing Reform Act of 2010 (the Act) became effective. While the Act did not amend the definition of the term "no-parole offense" in section 24-13-100 or decrease the maximum sentence for a second offense of possession with intent to distribute methamphetamine or conspiracy to manufacture methamphetamine, it added the following language to section 44-53-375(B): *"Notwithstanding any other provision of law,* a person convicted and sentenced pursuant to this subsection for a first offense or second offense may have the sentence suspended and probation granted, and *is eligible for parole,* supervised furlough, community supervision, work release, work credits, education credits, and good conduct credits." 2010 Act No. 273, § 38 (emphases added). Similar language was added to subsection (A) of section 44-53-375 and various provisions in section 44-53-370 covering controlled substances.

The legislature's use of the phrase "Notwithstanding any other provision of law," in the amendments to sections 44-53-375 and -370 expresses its intent to repeal section 24-13-100 *to the extent* it conflicts with amended sections 44-53-375 and -370. *See Stone v. State,* 313 S.C. 533, 535, 443 S.E.2d 544, 545 (1994) (holding that when two statutes "are in conflict, the more recent and specific statute should prevail so as to repeal the earlier, general statute"); *Hair v. State,* 305 S.C. 77, 79, 406 S.E.2d 332, 334 (1991) ("The law clearly provides that if two statutes are in conflict, the latest statute passed should prevail so as to repeal the earlier statute to the extent of the repugnancy."); *Strickland v. State,* 276 S.C. 17, 19, 274 S.E.2d 430, 432 (1981) ("[S]tatutes of a specific nature are not to be considered as repealed in whole or in part by a later general statute *unless* there is a direct reference to the former

statute or *the intent of the legislature to do so is explicitly implied therein.*" (emphases added)). Even if the language of section 24–13–100 could be considered more specific than the amendment to section 44–53–375(B), the intent to repeal section 24–13–100 to the extent it conflicts with the amendments to sections 44–53–370 and –375 is "explicitly implied" in the language of the amendments stating, "Notwithstanding any other provision of law." *See Strickland,* 276 S.C. at 19, 274 S.E.2d at 432 ("[S]tatutes of a specific nature are not to be considered as repealed in whole or in part by a later general statute *unless* there is a direct reference to the former statute or *the intent of the legislature to do so is explicitly implied therein.*" (emphases added)). Without this implicit repeal, the amendments themselves would be meaningless. *See State v. Long,* 363 S.C. 360, 364, 610 S.E.2d 809, 811 (2005) ("The legislature is presumed to intend that its statutes accomplish something.").

DOC admits that amended section 44–53–375(B) allows a person convicted of a second offense to be eligible for parole. However, according to DOC, a second offense under section 44–53–375(B) is still considered a no-parole offense unless the inmate is granted parole. During oral arguments, DOC asserted that the terms "parole eligible" and "no-parole offense" are defined differently. DOC argued, "a no-parole offense, as defined in [section] 24–13–100, is not defined by whether or not someone is eligible for parole." DOC further argued that the determination of parole eligibility and the application of good conduct, work or education credits to a sentence for a no-parole offense are two separate "parallel courses and both of those interpretations of [the] statutes do not conflict with one another." We disagree.

It is without doubt that the statutory definition for the term "no-parole offense" in section 24–13–100, i.e., "a class A, B, or C felony . . . ," simply describes the types of offenses for which the offender is not eligible for parole.[9] This interpretation is

---

9. *See Sweat,* 386 S.C. at 350, 688 S.E.2d at 575 ("The Court should give words their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." (quotation marks omitted)); *id.* ("A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers." (quotation marks omitted)).

consistent with provisions in related statutes stating that a no-parole offender is not eligible for parole.[10] Thus, it is unreasonable to characterize an offense for which the offender is eligible for parole as a no-parole offense pursuant to section 24–13–100, even if the maximum sentence for the offense places it within a classification encompassed by section 24–13–100.[11] This is the situation with a second offense under amended section 44–53–375(B), which still carries a maximum sentence of thirty years, rendering the offense a class A felony. Therefore, the definition of no-parole offense in section 24–13–100 conflicts with the legislative intent of the Act to exempt a second offense under section 44–53–375(B) from all the consequences of a no-parole offense.

In addition to the plain language of the amendment itself, legislative intent is expressly stated in Section I of the Act, which provides, in pertinent part,

It is the intent of the General Assembly to preserve public safety, reduce crime, and *use correctional resources most effectively.* Currently, the South Carolina correctional sys-

---

**10.** *See* S.C. Code Ann. § 24–21–30(A) (2007) ("A person who commits a 'no[-]parole offense' as defined in Section 24–13–100 on or after the effective date of this section is not eligible for parole consideration...."); § 24–21–30(B) ("Nothing in this subsection may be construed to allow any person who commits a 'no[-]parole offense' as defined in Section 24–13–100 on or after the effective date of this section to be eligible for parole."); *Beaufort Cnty. v. S.C. State Election Comm'n,* 395 S.C. 366, 371, 718 S.E.2d 432, 435 (2011) ("[I]t is well settled that statutes dealing with the same subject matter are *in pari materia* and must be construed together, if possible, to produce a single, harmonious result.").

**11.** *See Sweat,* 386 S.C. at 350, 688 S.E.2d at 575 ("All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." (quotation marks omitted)); *id.* ("A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers."); *id.* at 351, 688 S.E.2d at 575 ("Courts will reject a statutory interpretation which would lead to a result so plainly absurd that it could not have been intended by the Legislature or would defeat the plain legislative intention."); *State v. Johnson,* 396 S.C. 182, 188, 720 S.E.2d 516, 520 (Ct.App.2011) ("In interpreting a statute, the court will give words their plain and ordinary meaning, and will not resort to forced construction that would limit or expand the statute.").

tem incarcerates people whose time in prison does not result in improved behavior and who often return to South Carolina communities and commit new crimes, or are returned to prison for violations of supervision requirements. It is, therefore, *the purpose of this act* to reduce recidivism, *provide fair and effective sentencing options, employ evidence-based practices for smarter use of correctional funding,* and improve public safety.

2010 Act No. 273, § 1 (emphases added). Hence, one of the Act's objectives is to conserve taxpayer dollars by allowing earlier release dates for inmates convicted of less serious offenses.

DOC ignores the purpose of the Act and argues that amended section 44–53–375 does not conflict with sections 24–13–100 and –150 because offenders can be afforded each item listed in the amendment, i.e., parole, supervised furlough, community supervision, work release, work credits, education credits, and good conduct credits, without altering an eighty-five-percent service requirement for those not granted parole. DOC explains that none of the items in this list are incompatible with a requirement that an offender not granted parole serve eighty-five percent of his sentence. In support of this argument, DOC cites the following provisions: S.C. Code Ann. § 24–13–210(B) (Supp.2015) (providing for good conduct credits at the rate of three days for each month served for no-parole offenders subject to the eighty-five-percent requirement); S.C. Code Ann. § 24–13–230(B) (Supp.2015) (providing for work or education credits at the rate of six days for every month of employment or enrollment for no-parole offenders); S.C. Code Ann. § 24–21–560(A) (2007) (requiring no-parole offenders to participate in a community supervision program).

However, as we previously indicated, *supra,* there is a stark contrast between the credits allowed for inmates convicted of parolable offenses and the credits allowed for no-parole offenders. *See* S.C. Code Ann. § 24–13–210(A), (B) (Supp.2015) (allowing twenty days of good conduct credits for each month served for inmates convicted of parolable offenses versus three days for each month served for no-parole offenders); S.C. Code Ann. § 24–13–230(A), (B) (Supp.2015) (allowing zero to one day of work or education credit for every two days of employment or enrollment for inmates convicted of parolable

offenses versus six days for every month of employment or enrollment for no-parole offenders).

Further, DOC has not explained away the following language from the amendment: "[A] person convicted and sentenced pursuant to this subsection for a first offense or second offense may have the sentence suspended and probation granted...." S.C. Code Ann. § 44–53–375(B) (Supp.2015) The incongruity between this express allowance and the eighty-five-percent requirement that applies to no-parole offenses makes it unlikely that the legislature intended for this requirement to apply to the amended provisions of section 44–53–375(B).

DOC also argues that Inmate's interpretation of the amendment would render the language referencing community supervision meaningless because "only offenders serving sentences for 'no[-]parole offenses' are required to participate in community supervision." That may have been true before the amendments to sections 44–53–370 and –375 were enacted, but these amendments now *expressly allow* offenders to participate in community supervision as an alternative to the use of taxpayer funds to house them in prison. *See* S.C. Code Ann. § 44–53–375(B) (Supp.2015) ("Notwithstanding any other provision of law, a person convicted and sentenced pursuant to this subsection for a first offense or second offense ... is eligible for ... community supervision...."); 2010 Act No. 273, § 1 ("It is, therefore, the purpose of this act to reduce recidivism, *provide fair and effective sentencing options, employ evidence-based practices for smarter use of correctional funding,* and improve public safety." (emphasis added)).

Based on the foregoing, we hold that a second offense under section 44–53–375(B) is no longer a no-parole offense. *See Sweat,* 386 S.C. at 350, 688 S.E.2d at 575 ("All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." (quotation marks omitted)). Therefore, the ALC erred in rejecting Inmate's interpretation of the statutes in question.

## CONCLUSION

Accordingly, we reverse the ALC's decision.

**REVERSED.**

SHORT and McDONALD, JJ., concur.